POLONIA CABALLERO y OTROS, demandantes y recurrentes, *v.* CARLOS ROMERO BARCELÓ y OTROS, demandados y recurridos.

*Números:* O-81-189, O-81-195    *Resueltos:* 25 de mayo de 1982

*Luis F. Abreu Elías,* abogado de los recurrentes; *José Ramón Pérez Hernández,* abogado de los recurridos.

## SENTENCIA

La resolución recurrida en este caso en cuanto elimina el pago de vacaciones regulares de los beneficios marginales a que tienen derecho los peticionarios como empleados despedidos ilegalmente por el recurrido Municipio de San Juan, no puede prevalecer por ser contraria a la ley del caso. En nuestra sentencia de 28 de enero de 1981 confirmamos la dictada por el tribunal de instancia, en la que expresamente se reconoció el derecho de los empleados aquí recurridos a ser compensados, no sólo en el pago de vacaciones sino, además, en el del Bono de Navidad, en el del Seguro Social, en el de Sistema de Retiro y a los aumentos anuales en los sueldos dejados de percibir. Esta

1

sentencia constituye la ley del caso y no puede ser ahora alterada por el tribunal de instancia mediante una resolución emitida con respecto a los cómputos de los pagos individuales.

Se anula el auto en el caso O-81-189 por haber sido indebidamente expedido.

Se revoca la resolución recurrida en el caso O-81-195 y se devuelve el caso para el cómputo de las cantidades a ser pagadas a cada uno de los empleados recurrentes y para procedimientos ulteriores.

Así lo pronunció y manda el Tribunal y certifica la Secretaria. El Juez Asociado Señor Negrón García emitió opinión concurrente. El Juez Asociado Señor Díaz Cruz emitió opinión disidente.

(*Fdo.*) Lady Alfonso de Cumpiano

*Secretaria*

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

Coincidimos con el dictamen de hoy que reitera y da plena virtualidad a todos los derechos a que son acreedores los empleados cesanteados ilegalmente. Bajo el estado de derecho vigente no podemos refrendar una interpretación que introduzca en las órdenes remediales contenidas en la Sec. 7.17(2) de la Ley de Personal del Servicio Público, 3 L.P.R.A. sec. 1397(2), las normas sobre lucro cesante, fuente colateral, doble compensación, deber de minimizar daños y deducción de haberes por discreción judicial, por estimar que las mismas corresponden al campo doctrinario del resarcimiento de daños y perjuicios y no al diseño legislativo prevaleciente en materia de Derecho laboral, tanto en el ámbito público como privado. La modificación de esos derechos pertenece a la esfera de la Asamblea Legislativa.

Compatible con este enfoque estamos de acuerdo en que la parte dispositiva de nuestra sentencia de 28 de enero de 1981 reconocía el pago de vacaciones regulares entre los beneficios marginales que conllevaba la reposición de los demandantes recurrentes.

## I

Al igual que todo miembro de este Tribunal no estamos ajenos al impacto presupuestario negativo que el cumplimiento de esta sentencia implica para el municipio recurrido. Estamos conscientes de que dramas análogos o parecidos de ordinario se repiten con posterioridad a toda elección en la que ocurre un cambio de gobierno representativo de otra afiliación política. Con mayor o menor crudeza la situación históricamente ha acontecido bajo distintos partidos políticos. En este sentido no hemos madurado democráticamente. Tampoco somos insensibles a que en última instancia el verdadero perjudicado por actuaciones ilegales de esta índole por quienes detentan el poder público en determinado momento es la ciudadanía en general, independientemente de su afiliación política. El cumplimiento de sentencias en casos de esta naturaleza produce erosión y desvío sustancial de fondos públicos en menoscabo de los servicios esenciales y el buen funcionamiento municipal o gubernamental. El daño pecuniario es patente al presente más que nunca, pues es materia de conocimiento judicial la crisis financiera por la cual atraviesan las entidades municipales y gubernamentales. No obstante compartir esa preocupación, como guardianes de la justicia y del principio de mérito encarnado en la ley, no podemos adoptar otro curso de acción. Ello, sin embargo, no nos inhibe de exponer unas breves reflexiones al respecto.

## II

En cierto sentido este recurso origina consecuencias detrimentales económicas iguales a aquellos casos de

**4**

despidos políticos injustificados que constantemente vienen a nuestra consideración, en que se revela una dinámica humana —hondamente arraigada— sobre un fenómeno puertorriqueño que todavía se caracteriza por el patronazgo, despojo y desquite partidista (*spoil system*). Esa actitud infringe preceptos constitucionales básicos, amén de ser contraria al sistema de méritos en la sana administración del personal público.

La situación es crítica y reclama atención urgente. Varias avenidas pueden y deben explorarse y concretarse mediante enmiendas a la Ley de Personal. Una solución pragmática y justiciera —concordante con esa realidad contemporánea— sería la imposición de responsabilidad civil en la capacidad individual y personal de aquellos funcionarios públicos que, con demostrada mala fe [1] y claro y craso menosprecio de la ley, no la acatan. Otra sería establecer en las leyes correspondientes que actuaciones ilegales de este tipo, una vez comprobadas, sean causa de remoción del funcionario concernido. Otra, tal vez de un tenor más drástico —para algunos quizás revolucionario y para otros utópico— sería imponer o atribuirle esa responsabilidad financiera y costo al partido político que eligió al funcionario responsable de los despidos ilegales, inclusive contra los recursos que tuviere o pudiere tener el partido político correspondiente en el Fondo Electoral. Nótese que la acción ilegal discriminatoria surge precisamente porque el funcionario nominador concernido, en el desempeño de su gestión oficial, rehúsa divorciar el ámbito de su encomienda pública del criterio estrictamente partidista. Honestamente creemos que unos enfoques así de radicales actuarían como freno disuasivo

---

[1] Adviértase que la Ley Núm. 9 de 26 de noviembre de 1975 (32 L.P.R.A. secs. 3085–3092) autoriza al Secretario de Justicia —con sujeción a un trámite— a proveer representación legal y el pago de sentencias dictadas en causas de daños contra funcionarios o exfuncionarios por "violaciones a los derechos civiles . . . debido a actos u omisiones incurridos de buena fe, en el curso de[l] trabajo y dentro del marco de sus funciones".

contra estos abusos, pues exigirían mayor reflexión, prudencia y moderación.

Corresponde a la Asamblea Legislativa adoptar estas u
otras soluciones *efectivas y disuasivas* que eviten que sea la
ciudadanía la que finalmente se afecte y perjudique por
tales actuaciones.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

Por sentencia de 28 de enero de 1981 este Tribunal
revisó la dictada por la Sala de San Juan del Tribunal
Superior que ordenó al Alcalde de la Capital la reposición
de cuatro Investigadoras Auxiliares del Programa de
Ayuda a la Comunidad, que habían sido despedidas
ilegalmente en el año 1969, [1] modificada al solo efecto de
excluir de la protección de la sentencia a las peticionarias
de *mandamus* Luz María Boisjoli y Esther Velazco Oyola
cuya acción consideramos matizada de incuria por haber
formulado su reclamación 6 años y 4 meses después de
notificadas de su cesantía. En la etapa de ejecución y
liquidación de la sentencia ha surgido un nuevo conflicto
toda vez que la sentencia enmendada *nunc pro tunc*,
revisada por este Tribunal, en su parte dispositiva ordena
al municipio "satisfacerles [a las demandantes] los *sueldos*
y *emolumentos* que . . . tenían derecho a recibir". Por
resolución de 17 marzo, 1981 hubo de aclarar el Tribunal
que su sentencia cubre determinados beneficios margi-

---

[1] Sobre el origen de este pleito, informa el demandado recurrente: "De las
quince (15), o sea, [d]el total de las Investigadoras cesanteadas, once (11)
solicitaron y obtuvieron reempleo en diferentes áreas del Municipio previa
solicitud de ellas. Sólo cuatro, Carmen Sotomayor de Maldonado y Carmen
Maldonado Dosal, Luz María Boisjoli y Esther Velazco Oyola no solicitaron
reempleo por lo que no fueron reempleadas. Ellas instaron uno de los pleitos que
da origen a estos recursos, el 69-6012.

"Quedaron en el caso las primeras dos, Carmen Sotomayor de Maldonado y
Carmen Maldonado Dosal por cuanto. respecto a las otras dos se resolvió sus
demandas no·procedían por haberse instado sus recursos tardíamente." Alegato
del demandado recurrente, pág. 2.

nales, a saber, licencia por enfermedad, mas no vacaciones; y aportación proporcional del municipio al Seguro Social y Sistema de Retiro, además de los sueldos y aumentos anuales en sueldos. Contra dicha resolución recurrió en *certiorari* el alcalde demandado. A su vez, las dos empleadas demandantes Carmen Sotomayor y Carmen Maldonado Dosal, recurrieron en *certiorari* de orden de 10 marzo, 1981 de igual propósito aclaratorio de beneficios comprendidos y excluidos en la restitución. Consolidamos los recursos y el 30 de abril de 1981 expedimos el auto en ambos.

La solicitud de las empleadas se limita a negar facultad al tribunal de instancia para corregir su sentencia y hacer aclaraciones necesarias para su ejecución y liquidación, que es la etapa en que actualmente se halla el pleito. Su contención real es que el juez sentenciador debió añadir el pago de vacaciones regulares acumuladas, a la lista de beneficios en vías de liquidación.

Las empleadas despedidas tienen derecho a recibir, como parte de la restitución que satisfaga la vindicación de su derecho, los beneficios marginales que le reconoció el juez, y además el que le negó y que ellas reclaman de vacaciones acumuladas. Mas hay que partir de la premisa que todo este haz de compensaciones que integran la reparación del daño al patrimonio del empleado, tiene la esencial naturaleza de indemnización y se rige por normas sobre lucro cesante, fuente colateral y doble compensación que más adelante exponemos y que amplían y en parte modifican la doctrina de *Municipio de Coamo* v. *Tribunal Superior*, 99 D.P.R. 932 (1971), y de la sentencia de *Soto Bosque* v. *Junta de Personal*, 85 D.P.R. 814 (1962).

Este Tribunal ha conceptuado como *indemnización* el pago de salarios dejados de percibir por el empleado repuesto después de una destitución ilegal. Al efecto, en *Municipio de Coamo*, supra, pág. 940, declaramos: "El remedio no constituye una remuneración por *servicios*

*prestados* y sí una *indemnización* en dinero tradicionalmente concedida en estos casos: El sueldo es sólo la base de la indemnización, la medida para computarla." La decisión en *Municipio de Coamo*, supra, sin embargo, al confrontar la prohibición constitucional de que ninguna persona podrá recibir sueldo por más de un cargo o empleo en el Gobierno de Puerto Rico (Constitución E.L.A. Art. VI, Sec. 10),[2] bajo la premisa de que "indemnización" no es "sueldo", autoriza una doble compensación con fondos públicos al ordenar que no se descuenten de los haberes o remuneración de que fue privada la empleada por despido ilegal, los sueldos a ella pagados por otras agencias del Gobierno para las que trabajó durante su cesantía. Ordena la Constitución en el mismo Art. VI, Sec. 9 que sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley. No escapa al somero análisis que llámese sueldo o indemnización al resarcimiento del empleado repuesto, la erogación de fondos opera en detrimento del erario público. Si en la esfera de la contratación privada ha llegado este Tribunal muy cerca de repudiar como irracional la doctrina de la fuente colateral y su acumulación de beneficios (*Futurama Import Corp.* v. *Trans Caribbean*, 104 D.P.R. 609 (1976))[3] con mayor fundamento debe proscribirse, en vista de la preceptiva constitucional, de la indemnización de empleados públicos. Tanto en el empleo privado como en el gubernamental es el concepto de lucro

---

[2] Prohibición reiterada en el Art. 177 del Código Político, 3 L.P.R.A. sec. 551.

[3] De los factores o circunstancias a tomarse en cuenta al graduar o atemperar los *beneficios acumulados* según *Futurama*, supra, están presentes en este caso: 1) origen, naturaleza y propósito del beneficio adicional envuelto; 2) objetivos básicos del sistema de daños; 3) naturaleza del daño sufrido; 4) si el beneficio adicional entraña un enriquecimiento injusto; 5) si deriva el beneficio adicional y hasta qué punto, de sacrificios pecuniarios del perjudicado; 6) el mejor modo de conciliar los intereses envueltos en el caso concreto.

cesante o frustrado el que configura la paga equivalente de salarios y beneficios por el tiempo que las actuaciones del demandado ocasionaron una interrupción y cese de ingresos. *Cf. Publio Díaz* v. *E.L.A.*, 106 D.P.R. 854, 869–870 (1978).

De regreso a la norma constitucional de que *en todo caso*, de las propiedades y fondos públicos sólo se dispondrá por autoridad de ley, encontramos que la Ley que autoriza la prestación de la indemnización en virtud de la cual se equilibra o nivela la diferencia entre el estado del patrimonio actual del empleado perjudicado y el que tendría ese patrimonio en el caso de que el hecho dañoso de su destitución o suspensión ilegal no se hubiera producido, es la Ley de Personal del Gobierno (Núm. 345 de 12 mayo, 1947), vigente al tiempo de *Municipio de Coamo*, supra, que en lo pertinente de su Art. 31 (3 L.P.R.A. sec. 671) ordenaba:

> Si la decisión de la Junta fuere favorable al funcionario o empleado querellado, la autoridad nominadora le restituirá a su puesto, teniendo dicha restitución carácter retroactivo a la fecha en que el querellado hubiere sido destituido. La Junta autorizará el pago total o parcial que habría correspondido al empleado o funcionario restituido a partir de la fecha en que fue destituido por la autoridad nominadora, o que se considere dicho tiempo como una suspensión de empleo y sueldo, o podrá recomendar cualquier otra penalidad razonable dentro de las disposiciones de las secs. 641 a 678 de este título; Disponiéndose que en caso de que la Junta o el tribunal, en su caso, ordene la reposición con paga de los haberes atrasados que puedan corresponder a cualquier empleado destituido, si el puesto ha sido cubierto con carácter provisional antes de la decisión de la Junta o del tribunal, en su caso, por la presente se autoriza y ordena al Secretario de Hacienda a verificar el pago contra economías en las asignaciones de la agencia o del Departamento de que se trate y en caso de que no las hubiere contra cualesquiera fondos existentes en el Tesoro de Puerto Rico no destinados a otras atenciones.

Dicha disposición fue suplantada por la Sec. 7.17 de la Ley de Personal del Servicio Público (Núm. 5 de 14 octubre, 1975 (3 L.P.R.A. sec. 1397)) que dispone:

*Órdenes remediales*

(1) En los casos en que la Junta resuelva a favor del querellante, dictará las órdenes remediales pertinentes.

(2) En casos de destitución, si la decisión de la Junta es favorable al empleado, ésta deberá ordenar su restitución a su puesto, o a un puesto similar. Asimismo deberá ordenar el pago total o parcial de los salarios dejados de percibir por éste desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales a que éste hubiese tenido derecho.

(3) En casos de suspensión de empleo y sueldo, si la decisión de la Junta es favorable al empleado, deberá ordenar el pago total o parcial de los salarios dejados de percibir por éste y de todos los beneficios marginales a que éste hubiese tenido derecho durante el período de suspensión.

Como se desprende de los textos citados, tanto la anterior como la vigente Ley de Personal refieren a la facultad estimativa del órgano que evalúa el despido la decisión en cuanto a si el resarcimiento del empleado amerita un pago equivalente al *total* o *parte* de los salarios dejados de percibir. La razón para rehusar el importe total de salarios puede ser la acción de la Junta o del tribunal substituyendo la sanción de destitución por alternativa de suspensión, como se dijo en *Soto Bosque* v. *Junta de Personal*, supra, variación de la penalidad en cuanto a tiempo de privación de salario, y dentro de la evidente flexibilidad del estatuto, cualquiera otra que en sano ejercicio de arbitrio por el juzgador determine que el resarcimiento del empleado se cumple con menos del importe total de los salarios perdidos, siguiendo la norma de satisfacer daños y perjuicios "merced a la cual se procura la obligada restauración del desequilibrio producido en el patrimonio del acreedor por el incumplimiento

de la obligación imputable al deudor".(⁴) Al aplicar esta norma de esencial justicia, podrán deducirse de la indemnización que corresponda al empleado los salarios percibidos tanto de empresa privada como de empleo público, sin que pueda echarse a dormir en espera de un premio de salarios acumulados por años porque como todo acreedor de daños y perjuicios está en la obligación de aminorar los mismos, y su esperanza de capitalizar el ocio a costa de fondos públicos tropezará con el ejercicio de la discreción judicial para moderar la indemnización reduciéndola al pago parcial de los salarios; al igual que servirá dicha discreción del magistrado para preservar para el empleado el beneficio máximo o pago total de los salarios y concesión de todos los beneficios marginales cuando ante él se justifiquen la inactividad del empleado durante la cesantía y la ausencia de esfuerzo generador de ingresos por dicho período. Si la deducción de sueldos percibidos en el empleo público es mandatoria por razón de los preceptos de la Constitución de 1952 antes citados, la de salarios ganados en la industria privada lo son igualmente deducibles si hemos de extender a ambos empleados la igual protección de las leyes, y eludir un discrimen que castiga económicamente al servidor público y por otro lado premia a su contraparte en la industria privada. Éste siempre vendría sujeto al principio que proscribe la "doble compensación" como costo adicional a la sociedad que la paga. *Futurama Import Corp.*, ante. El actual estado de Derecho constituido por la caracterización en la jurisprudencia patria de la restitución al empleado público ilegalmente despedido como indemnización o resarcimiento de daños y perjuicios, y la latitud de la Ley de Personal en su alternativa de pago *total* o *parcial* de ingresos y beneficios interrumpidos por la acción dañosa, dejan la dimensión y alcance de este estatuto reparador al arbitrio judicial, que deberá ejerci-

---

(⁴) Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 10ma ed., T. 3, pág. 187.

tarse en forma que haga justicia al funcionario o empleado sin exceso detrimental para la sociedad y del modo que más se acerque a la nivelación del patrimonio afectado por el lucro frustrado. Este método de compensación con el equivalente de salarios atiende a la pérdida de ingreso, que es una partida de daños; y no excluye en los casos adecuados la causa de acción en daños y perjuicios del empleado contra el funcionario que le destituye con crasa arbitrariedad y abuso de poder, a la que proveen el Art. 1802 del Código Civil y la derivada del *injunction* de derechos civiles, 32 L.P.R.A. sec. 3524(3)(2). [5] El freno contra los despidos arbitrarios a que este Tribunal se refirió en *Torres Cartagena* v. *Srio. de Instrucción*, 94 D.P.R. 690, 696 (1967), tendrá una adicional potencia disuasiva en esta acción civil en daños.

Aquellos beneficios marginales que no fueren compensados por una concesión equivalente en el nuevo empleo no sufrirán mengua ni reducción llegado el momento de implementar la acción reparadora. Se cuentan entre estos beneficios las vacaciones, la licencia de enfermedad, las cuotas al Sistema de Retiro, Seguro Social, Bono de Navidad, sin que pretendamos hacer una lista exclusiva, que son parte inseparable de la restitución y resarcimiento, y le serán preservados y pagados al empleado repuesto si no le hubieren sido concedidos en el segundo empleo.

---

[5] Disponiéndose, sin embargo, que el tribunal podrá dictar Orden de entredicho provisional:

"(1) .        .        .        .        .        .        .        .

"(2) Cuando en la petición se alegue que alguna persona, bajo la autoridad de alguna ley, ordenanza, o reglamento del Estado Libre Asociado de Puerto Rico, esté privando o sea el causante de que alguien esté privando al peticionario de algún derecho, privilegio o inmunidad protegido por la Constitución o las Leyes del Estado Libre Asociado de Puerto Rico o por la Constitución o Leyes de los Estados Unidos de América que sean aplicables a las personas bajo la jurisdicción del Estado Libre Asociado de Puerto Rico.

"Disponiéndose además; que al dictar dicha orden el Tribunal debe considerar el interés público envuelto y concluir que la parte peticionaria tiene una posibilidad real de prevalecer en los méritos de su petición. Dicha orden sólo tendrá vigor en el caso específico ante el tribunal y entre las partes."

No vemos problema en la restitución de derechos del empleado ilegalmente despedido, al Sistema de Retiro. El Art. 20 de la Ley, 3 L.P.R.A. sec. 780, ordena que las aportaciones se harán en forma de descuentos en la retribución del empleado por el oficial pagador del patrono, lo que simplemente plantea demora en el descuento y pago, imputable únicamente al patrono. Por analogía el Sistema podría seguir la regla de recuperación de aportaciones no deducidas por la agencia, 3 L.P.R.A. sec. 815(b); y la regla para pago de cuotas interrumpido por accidente del trabajo. 3 L.P.R.A. sec. 765. Como cuestión de principio, la falta de cotización o prestación de servicios impuesta por un despido ilegal no puede operar en perjuicio del empleado.

Insisto en que este Tribunal puede y debe actuar en este caso para suprimir la doble paga sin trabajar en una época donde tanto trabajador está perdiendo su empleo por falta de recursos del patrono. Sólo proponemos que en la liquidación de haberes correspondientes al empleado repuesto, se le descuenten los salarios percibidos en otro empleo —público o privado— durante su cesantía. No es tan extrema dicha norma como la adoptada por este Tribunal desde el año 1953 en *Rosario* v. *Comisión Policía Insular*, 74 D.P.R. 353, y que constituye un bien fundado precedente en nuestra jurisprudencia. Allí dijimos:

> Aunque sea permisible el considerar y resolver en una petición de mandamus una reclamación por sueldos atrasados, sin embargo, y al igual que en todo caso de acumulación de acciones, bajo la propia Regla 18, el remedio sólo puede concederse de acuerdo con los derechos sustantivos de las partes. Aun si el peticionario en este caso tenía derecho a ser repuesto en su cargo de teniente primero de la policía insular, si, como cuestión de hecho, los cargos de teniente primero estaban siendo ocupados y desempeñados por otras personas durante el período de tiempo en que el peticionario debió haber sido repuesto en su cargo, y esas personas, como funcionarios defacto, percibieron los sueldos correspondien-

tes, el peticionario no tiene derecho a que se le paguen tales sueldos en este recurso de mandamus. [Citas.] El interés público determina la necesidad y conveniencia de que haya continuidad en los servicios gubernamentales y, a tal fin, el *desideratum* consiste en que las obligaciones inherentes a los cargos públicos sean desempeñadas en todo momento por algún funcionario, aunque sea defacto. Ello implica el pago de sueldos a tales funcionarios y, por consiguiente, el gobierno no debe ser obligado a satisfacer dos veces el mismo sueldo. [Citas.] Además, e independientemente de disposiciones estatutarias que determinen lo contrario, el derecho a sueldos o salarios públicos debe ser función y consecuencia de servicios prestados, mientras ello sea posible. [Citas.] En términos generales, el desempeño de un cargo gubernamental no debe ser considerado como un derecho propietario, sino como un deber fiduciario en beneficio del pueblo y, por lo tanto, el disfrute de los sueldos es un incidente de la prestación de servicios. [Citas.] Como fundamentos adicionales de la regla que prohibe el pago de salarios por el gobierno cuando tales salarios ya han sido pagados a un funcionario defacto, se ha señalado que los funcionarios gubernamentales a cargo del pago de salarios y sueldos públicos deben tener el derecho a descansar en el título aparente del funcionario *de facto*, y no deben ser obligados, antes de autorizar el pago de tales sueldos, a asumir la función judicial de decidir quién tiene derecho a los sueldos. [Citas.]

Se podría argumentar que el derecho a sueldos es un incidente y consecuencia del derecho al cargo y que los sueldos deberían ser obtenibles desde el momento en que surgió el derecho a la reposición en el cargo; siendo el derecho a sueldos creado por autoridad de ley y no por disposición contractual, siendo tal derecho, por lo tanto, independiente de la prestación de servicios. [Citas.] Sin embargo, tal concepto técnico debe quedar subordinado al interés público predominante de lograr la prestación de servicios gubernamentales continuos y de evitar la duplicidad en el pago de sueldos. Págs. 361–363.

A los fundamentos de urgente necesidad pública, de la inmoralidad del doble pago, del discrimen resultante de admitir deducción de salarios pagados con fondos públicos,

mas no los de empresa privada aunque fueran más altos y a la grave injusticia que representa distraer los escasos recursos destinados a servicios esenciales de nuestro pueblo, para pagar una doble compensación, debe sumarse el valor de precedente bien fundado en la jurisprudencia patria formulado en *Rosario* v. *Comisión Policía Insular*, supra, y con el que se interpretó la Sec. 31 de la anterior Ley de Personal Núm. 345 de 12 mayo, 1947 (3 L.P.R.A. sec. 671), cuyo texto referente al pago de sueldos como indemnización se mantiene hoy en la Sec. 7.17 de la Ley de Personal vigente, Núm. 5 de 14 octubre, 1975 (3 L.P.R.A. sec. 1397).

No veo razón para eludir la cuestión de alto interés público después de haber expedido el auto. El caso se halla en etapa de liquidación y las deducciones que propongo de ingresos derivados durante la cesantía, de fuentes tanto gubernamentales como privadas, es cuestión que no debemos eludir, por la grave repercusión que el desembolso de cientos de miles de dólares de sueldos, y beneficios marginales tiene en el presupuesto de los municipios afectados, muchos de ellos al borde de la quiebra; y por lo menos dos en que los empleados han renunciado el salario por algún tiempo, para que puedan atenderse necesidades vitales de la comunidad, como medicinas para pobres, servicio de ambulancia, limpieza pública, etc. ¿Cómo reconciliarnos con la práctica de pagar *doble* a quien no ha rendido servicios al pueblo, frente al empleado que se aviene a una reducción del salario durante la crisis, o el infeliz que necesita un costoso suero humano antitetánico? Este Tribunal ha provisto remedio cuando lo demandan bien el interés público, o los derechos privados de los litigantes, sin detenernos ante obstáculos procesales, pídalo o no la parte que tiene derecho a ese remedio. Hasta hemos originado cuestiones constitucionales que debieron suscitarse en instancia. No hay duda de que tenemos jurisdicción y mandato de ley para así actuar. De modo que la

falta de claridad en el estatuto, hoy superada por la interpretación sociológica, no es obstáculo para que enfrentemos la arbitrariedad que representa la paga doble para quien ni siquiera trabajó tiempo sencillo. Nuestra jurisprudencia da fe de que ni la ley del caso, ni la excepción de cosa juzgada, ni la falta de iniciativa de la parte con derecho a remedio, han detenido la acción resuelta de este Tribunal. Sin embargo, en el caso que nos ocupa no hay que recurrir a excepción; la sentencia se halla en etapa de liquidación y el presente criterio provee la solución más justa para los miles de puertorriqueños afectados por esta situación. Está totalmente carente de base la invocación de la "ley del caso" —que jamás ha sido muro insuperable en nuestra razón de decidir— cuando no nos detuvo para ordenar deducción de salarios de fuentes gubernamentales en *Bachier Ortiz* v. *Pirela, Alcalde de Arroyo*, R-81-46, S. de 29 octubre, 1981; ni en *Municipio de Mayagüez* v. *Rivera y otros*, O-81-640, Resolución de 30 diciembre, 1981.

Si el pago *total* o *parcial* de salarios dispuesto tanto en la anterior como en la vigente Ley de Personal tiene, según *Municipio de Coamo*, supra, naturaleza de indemnización, como tal debe adjudicarse y modificarse según el arbitrio judicial aprecie el daño económico que sufre el empleado destituido. No hay que legislar para eso, ni mucho menos debe detener a este Tribunal que cumple su función de interpretación de las leyes en forma creadora, enfilada al máximo beneficio en su aplicación. Este Tribunal declaró en *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250, 278 (1978):

> En buena teoría de adjudicación, además, los parlamentos no son los únicos agentes de cambios sociales necesarios. Cuando se trata de mantener vivo un esquema constitucional, de conservarlo en buena sintonía con las realidades del país, es principal deber de la judicatura propender igualmente a tal fin, aunque con la mesura y circunspección que le impone su papel dentro de nuestro sistema de gobierno y sin exceder el marco de sus atribuciones.

El argumento de que el pago completo de salarios, sin deducciones, es disuasivo contra los despidos injustos ha perdido toda validez. La arbitrariedad la ejercía el alcalde o jefe de agencia sin temor, porque otro (el contribuyente) pagaba. Los nuevos remedios de hoy, la legislación federal de Derechos Civiles en cuya aplicación tenemos jurisdicción concurrente, y nuestro propio *injunction* de 32 L.P.R.A. sec. 3524(3)(2), auxiliado por el Art. 1802 del Código Civil proveen un remedio contra el propio funcionario opresor.

La solución fundada en Derecho, aquí propuesta, es de inaplazable urgencia. Nuestros municipios y agencias enfrentan una crítica insuficiencia presupuestaria. Miles de empleados quedan cesantes por falta de recursos públicos. ¿Por qué otros van a *cobrar doble* y aun por servicios no-prestados?

Dictaría sentencia que modifique las resoluciones recurridas al solo efecto de incluir el pago de vacaciones regulares entre los beneficios marginales que deben extenderse en la restitución; y así modificadas, confirmadas. Y que ordenara vista sobre liquidación de sueldos y beneficios para deducir de los mismos los sueldos y salarios que durante la separación de su empleo con el municipio hayan percibido estas empleadas de otros patronos, y para la final adjudicación de derechos en forma compatible con este criterio.