EL MUNICIPIO DE MAYAGÜEZ, peticionario, *v.* PEDRO JAIME RIVERA, ET AL., recurridos; JUNTA DE APELACIONES DEL SISTEMA DE ADMINISTRACIÓN DE PERSONAL, recurrida.

*Número:* O-82-389      *Resuelto:* 27 de octubre de 1982

*Eugenio Sánchez Ruiz*, abogado del peticionario; *Miguel Hernández Colón*, abogado de los recurridos; *Ramón L. Juliá Ramos* e *Ivonne González*, abogados de la recurrida Junta de Apelaciones del Sistema de Administración de Personal.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Con fecha de 30 de diciembre de 1981, en reconsideración, dictamos una resolución[1] mediante la cual expresamos, en lo pertinente, que: ". . . deberá la sala de instancia proceder a la liquidación de los salarios y beneficios correspondientes a los empleados demandantes, deduciendo de los mismos los salarios y sueldos por ellos percibidos *de cualquier otra fuente gubernamental y pagados con fondos públicos,* durante el tiempo de cesantía." (Énfasis suplido.) Ello en relación con un caso de empleados de carrera del Municipio de Mayagüez que acudieron ante la Junta de Apelaciones del Sistema de Administración de Personal alegando que sus puestos habían sido eliminados ilegalmente del presupuesto ordinario del municipio. La Junta dictó resolución que favoreció a dichos empleados. No conforme con ella, el municipio acudió en revisión judicial ante el Hon. Tribunal Superior de Puerto Rico, Sala de Mayagüez, el cual confirmó mediante sentencia la resolución de la Junta a los efectos de que el municipio venía obligado a reponer en sus puestos a los empleados, en puestos iguales o similares a los que ocupaban y a abonar a dichos empleados los sueldos y haberes dejados de percibir desde su separación hasta la fecha en que sea efectiva su reposición. Denegamos la solicitud de *certiorari,* Caso Núm. O-81-640, que instara el municipio en relación con la citada sentencia en que se dicta la orden que se transcribe al comienzo de la presente opinión.

El Municipio de Mayagüez dio cumplimiento a la sentencia dictada en cuanto a la reposición de los empleados,

---

[1] En *Municipio de Mayagüez* v. *Rivera y otros, Certiorari* Núm. O-81-640.

quedando pendiente la fase de ejecución y liquidación de los salarios de los referidos empleados.

En cumplimiento de nuestra resolución el tribunal de instancia, con fecha de 27 de mayo de 1982, emitió una resolución en la cual, en lo pertinente, determinó que el Municipio de Mayagüez venía obligado a pagar a los empleados los intereses legales sobre la cuantía de la sentencia a partir de la fecha en que dictó la misma —6 de octubre de 1981— y, específicamente en cuanto a la empleada Jeanette Valentín, determinó que no era procedente en derecho el deducir los salarios que ésta había devengado trabajando para la Autoridad de la Fuentes Fluviales, hoy Autoridad de Energía Eléctrica, porque, aparentemente, estos fondos no provenían de "fuente gubernamental" o dichos salarios no fueron "pagados con fondos públicos".

Alega ante nos el Municipio de Mayagüez que cometió error el tribunal de instancia al hacer las dos determinaciones antes señaladas.

De entrada debemos señalar que hemos notado cierta inconsistencia en los dictámenes de los tribunales de instancia en lo referente a la imposición del interés al tipo legal sobre la cuantía de la sentencia dictada en casos en que se ha condenado al Estado Libre Asociado de Puerto Rico y/o sus municipios, agencias e instrumentalidades al pago de una suma de dinero.

En términos generales, hemos dicho que estos intereses forman parte integrante de la sentencia dictada y que pueden ser recobrados aun cuando no se mencionen en la misma. *P.R. & Ame. Ins. Co.* v. *Tribunal Superior*, 84 D.P.R. 621, 622–623 (1962).[2] También con anterioridad al día de hoy —ya en relación a casos en que ha estado envuelto el Gobierno de Puerto Rico— hemos dicho que esos intereses proceden como cuestión de ley ". . .y no son contra-

---

[2] Allí se interpreta el Art. 341 del Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. sec. 1473.

rios a las leyes de inmunidad gubernamental". *Insurance Co. of P.R.* v. *Tribunal Superior*, 100 D.P.R. 405, 409 (1972). [3]

Esta situación se rige, hoy día, por las disposiciones de la Regla 44.3 de las de Procedimiento Civil de 1979, la cual dispone:

Regla 44.3. *Interés legal*

(a) Se incluirán intereses al tipo legal en toda sentencia que ordena el pago de dinero a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, sin incluir costas y honorarios de abogado.

(b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés legal desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en casos de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. Las disposiciones de este inciso serán aplicables a las causas de acción que hayan surgido a partir del 26 de mayo de 1967.

Dispone el Art. 14 de nuestro Código Civil —31 L.P.R.A. sec. 14— que: "Cuando la ley es clara[,] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu." [4]

▇ La letra del inciso *a* de la citada regla no puede ser más clara: bajo sus disposiciones es mandatorio el que un tribunal, al dictar una sentencia en que ordene el pago de dinero, imponga el pago de interés al tipo legal sobre la cuantía de la sentencia sin excepción de clase alguna.

Formando dichos intereses parte integrante de la sentencia, y tomando en consideración que no son contrarios a

---

[3] En relación con la Regla 44.4(e) de las de Procedimiento Civil de 1958.

[4] *Rodríguez* v. *Fidelity Bond Mortg. Corp.*, 108 D.P.R. 156, 158 (1978).

las leyes de inmunidad gubernamental y que el citado inciso *a* de la Regla 44.3 no excluye de sus disposiciones a parte alguna, no cometió error el tribunal de instancia en el presente caso al imponerle al Municipio de Mayagüez el pago de intereses al tipo legal sobre la cuantía de la sentencia que dictara. [5]

Sí cometió error, sin embargo, el tribunal sentenciador, al determinar que dichos intereses debían ser computados a partir de la fecha —6 de octubre de 1981— en que dictó su sentencia. [6]

En *Colón Molinary* v. *A.A.A.*, 103 D.P.R. 143 (1974) —caso en que unos empleados de la Autoridad de Acueductos y Alcantarillados acudieron ante este Tribunal en solicitud de que pusiéramos en vigor un laudo de arbitraje rendido en virtud de un convenio colectivo existente entre la Autoridad y la Unión de Empleados de dicha agencia— los empleados peticionarios solicitaron, alegando la naturaleza similar de un laudo de arbitraje a una sentencia o decreto judicial, la imposición de intereses desde la fecha en que se dictó el laudo.

■ Citando con aprobación el caso de *Ríos* v. *Puerto Rico Cement Corp.*, 66 D.P.R. 470, 477 (1946), donde señalamos que "Un laudo de arbitraje ocupa una posición muy similar a la de una sentencia o decreto judicial", y el caso de

---

[5] Distinto es el caso del inciso *b* de la referida Regla 44.3 que brega con la imposición de interés al tipo legal a la parte que, en opinión del tribunal sentenciador y en las situaciones allí enumeradas, haya procedido con temeridad. Se exceptúan, específicamente de las disposiciones del inciso *b*, al Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial, cuando éstos son parte demandada en un litigio.

[6] Los empleados no recurrieron de la resolución que emitiera el tribunal de instancia con fecha de 27 de mayo de 1982. Ello, de ordinario, nos impediría el modificar la resolución en su favor. Sin embargo, en vista de lo resuelto en *Insurance Co. of P.R.* v. *Tribunal Superior*, supra, a los efectos de que dichos intereses proceden como cuestión de ley, y lo resuelto en el caso antes citado de *P.R. & Ame. Ins. Co.* a los efectos de que dichos intereses forman parte integrante de la sentencia que se dicte y que pueden ser recobrados aun cuando no se mencionen en la misma, entendemos que tenemos facultad para modificar la citada resolución, ya que lo que estamos haciendo es reconociendo un "estado de derecho" existente.

*Junta Relaciones del Trabajo* v. *N.Y.&P.R.S/S Co.*, 69 D.P.R. 782 (1949), en donde reconocimos su dual naturaleza, expresamos en *Colón Molinary* v. *A.A.A.*, supra, pág. 160, "Consecuencia lógica e inexorable al trazar rumbos paralelos entre un laudo arbitral y un dictamen judicial es el reconocer que proceden intereses legales", y decidimos que los mismos debían ser computados a partir de la fecha del laudo rendido.

En el día de hoy resolvemos que el antes mencionado razonamiento es de aplicación a una decisión emitida por la Junta de Apelaciones del Sistema de Administración de Personal. No todos los casos en que la Junta interviene y ordena reposición y el pago de salarios dejados de percibir son revisados por un tribunal. Muchas decisiones de la Junta, al igual que en casos de laudos de arbitraje, son acatados por la parte perdidosa ante dicho organismo. Sería injusto, por discriminatorio, el que en aquellos casos en que se solicita revisión judicial y, por lo tanto, en que un tribunal emite una sentencia, los empleados envueltos tengan derecho al pago de interés al tipo legal desde la fecha de la sentencia dictada hasta que se le pague lo adeudado y en aquellos casos en que no se solicita revisión judicial los empleados envueltos no tengan derecho al pago de interés legal desde la fecha de la decisión de la Junta hasta el total pago de la suma de dinero a que tienen derecho.

Es por ello que resolvemos que, en ambas situaciones, aquel empleado que es injustamente despedido y cuya reposición se ordena con el pago de salarios dejados de percibir tiene el derecho de recibir el pago de intereses al tipo legal sobre la cuantía de lo adeudado, que serán computados desde la fecha de la decisión que emita la Junta de Apelaciones del Sistema de Administración de Personal. [7] Nos parece que ello inclusive evitará las solicitudes frívolas

---

[7] Todo ello sujeto a la "fórmula" establecida en *Zequeira* v. *C.R.U.V.*, 95 D.P.R. 739 (1968).

de revisión de las decisiones que emita la Junta y el pronto pago de lo adeudado a los empleados.

Igualmente cometió error el tribunal de instancia al resolver, en relación con la empleada Jeanette Valentín, que el Municipio de Mayagüez no podía deducir los salarios que ella había devengado mientras trabajaba para la Autoridad de Energía Eléctrica "durante el tiempo de cesantía".

En *Torres Ponce* v. *Jiménez*, 113 D.P.R. 58 (1982), donde resolvimos que el "principio de mérito" establecido por la Ley Núm. 5 del 14 de octubre de 1975 conocida como Ley de Personal del Servicio Público le era aplicable a un empleado de la Puerto Rico Telephone Co., corporación que fue organizada bajo la Ley de Corporaciones del Estado de Delaware, Estados Unidos de Norteamérica, y cuyas acciones —el 100 por ciento de ellas— fueron compradas por la corporación pública del Estado Libre Asociado conocida como la Autoridad de Teléfonos, expresamos que:

> Después de la Primera Guerra Mundial surgió la necesidad de desarrollar corporaciones públicas para cumplir con las nuevas y numerosas tareas que confrontaban las naciones del mundo occidental. Mientras antes los gobiernos sólo se limitaban a reglamentar el funcionamiento y la operación de algunas industrias, se vieron obligados a llevar a cabo por sí mismos ciertas actividades económicas. . . . En época de escasez de capital, de altas tasas de contribución sobre las ganancias, de grandes riesgos para la inversión, se establecieron corporaciones públicas en los sectores de la economía donde el empresario se abstuvo de actuar. . . . En la mayoría de los casos una mezcla de factores políticos y prácticos fue el motivo determinante para su creación. De la infinita variedad de corporaciones públicas destacan principalmente tres tipos.
>
> 1) Las agencias o departamentos de los gobiernos.
> 2) Las corporaciones públicas puras creadas por estatuto.
> 3) Las corporaciones de emisión de acciones organizadas al amparo de las leyes de corporaciones privadas que son controladas total o parcialmente por el gobierno.

Se han señalado varias ventajas para asumir la estructura de la corporación privada. Entre ellas se encuentran el evitar el formalismo y la reglamentación rígida para promover la eficiencia y la originalidad gerencial.

La estructura de corporación público-privada permite un funcionamiento independiente. No se ve obligada a esperar recibir asignaciones anuales de fondos para funcionar. Produce y genera su propio capital. Puede reinvertir el sobrante, ahorrar o reducir las tarifas de los consumidores, según convenga. De su estado financiero responderá a aquellos organismos dispuestos por ley, mediante informes periódicos preparados por auditores comerciales y los del propio gobierno. Págs. 62-64.

La ley que creó la Autoridad de las Fuentes Fluviales —Ley Núm. 83 de mayo 2 de 1941— en su Sec. 3 "disponía" que: [8]

Sec. 193. *Creación y organización de la Autoridad*

(a) Por la presente se crea *un cuerpo corporativo y político* con el Gobernador de Puerto Rico, el Secretario de Obras Públicas de Puerto Rico y el Secretario de Agricultura y Comercio de Puerto Rico, *que constituirá una corporación pública e instrumentalidad gubernamental del Estado Libre Asociado de Puerto Rico* con el nombre de "Autoridad de las Fuentes Fluviales de Puerto Rico." Los citados miembros de la Autoridad no recibirán compensación por sus servicios como tales.

(b) *La Autoridad creada por la presente es y deberá ser una instrumentalidad gubernamental*, sujeta, según se provee en la presente, al control de ciertos funcionarios del Gobierno

---

[8] Dicha sección fue enmendada en el 1966: sus incisos *a* y *b* fueron enmendados suprimiéndose y sustituyendo al Gobernador de Puerto Rico y los Secretarios de Obras Públicas, Agricultura y Comercio por la "Junta de Gobierno". 22 L.P.R.A. sec. 193.

En el 1979, mediante la Ley Núm. 57 de mayo 30, se sustituyó "Autoridad de las Fuentes Fluviales de Puerto Rico" por "Autoridad de Energía Eléctrica de Puerto Rico" y se efectuaron otros cambios adicionales no pertinentes al presente caso.

Estadual, a saber: el Gobernador, el Secretario de Obras Públicas y el Secretario de Agricultura y Comercio, actuando en su capacidad de miembros y Junta de Gobierno de aquélla, *pero es una corporación con existencia y personalidad legales separadas y aparte de la del Gobierno y de la de los funcionarios que la controlan.* Las deudas, obligaciones, contratos, bonos, notas, pagarés, recibos, gastos, cuentas, fondos, empresas y propiedades de la Autoridad, sus funcionarios, agentes o empleados, debe entenderse que son de la mencionada corporación gubernamentalmente controlada y no del Gobierno Estadual ni de ninguna de sus oficinas, negociado, departamento, comisión, dependencia, municipalidad, rama, agente, funcionario o empleado. (Énfasis suplido.)

No hay duda, por lo tanto, de que la Autoridad de las Fuentes Fluviales de Puerto Rico o la Autoridad de Energía Eléctrica de Puerto Rico es una corporación pública que goza de una estructuración que la asemeja a una corporación privada, disfrutando así de unas ventajas que esa dualidad le permite. Esta dualidad o desdoblamiento no causa, sin embargo, que los fondos con que paga a sus empleados no provengan de "fuente gubernamental" o no constituyan "fondos públicos". Es por ello que el tribunal de instancia incidió al no deducir los salarios percibidos por Jeanette Valentín mientras trabajó para dicha instrumentalidad gubernamental.

Por los fundamentos antes expuestos, *se expide el auto y se dictará sentencia en que se modifique, de acuerdo con lo aquí expresado, la resolución que emitiera el Hon. Tribunal Superior de Puerto Rico, Sala de Mayagüez, con fecha de 27 de mayo de 1982 y, así modificada, se confirma.*

El Juez Asociado Señor Díaz Cruz disiente por los fundamentos de su opinión en *Caballero* v. *Romero Barceló*, 113 D.P.R. 1 (1982).