*717 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, mediante recursos de apelación, la parte interventora y apelante, Lie. Flor Casiano Báez, en adelante, licenciado Casiano, solicitando la revisión de una Sentencia Parcial emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal a quo condenó, entre otros extremos, a la parte apelada pagar al licenciado Casiano la cantidad de $118,160 por concepto de servicios profesionales prestados.
Por las razones que expondremos a continuación, y luego de consolidar los recursos de apelación instados, y de considerar detenida y cuidadosamente la comparecencia de las partes, resolvemos que procede revocar la Sentencia.
I
Conforme surge de los expedientes ante nuestra consideración, el 21 de julio de 1992, el licenciado Casiano interpuso demanda de intervención contra la causante, Rosa Esther Fernández Sánchez, Angel Luis Cruz Fernández y José Angel Cruz Fernández, en adelante, la parte apelada. En dicho escrito, solicitó el cobro de honorarios por servicios profesionales prestados a la parte apelada con motivo de un pleito de filiación presentado el 10 de febrero de 1982.
La parte apelada contestó la demanda incoada. Admitió que el licenciado Casiano había prestado los servicios profesionales, pero cuestionó la validez del contrato suscrito entre la causante y éste.
Mediante Sentencia emitida el 10 de diciembre de 1993, el Tribunal Supremo de Puerto Rico determinó que un examen del contrato en controversia no revelaba, de su faz, razón alguna en derecho para invalidarlo. En su consecuencia, devolvió el caso para la celebración de una vista expresando:

“A la luz de lo expuesto, entendemos que debió celebrarse una vista para dilucidar si existen razones para invalidar o no honrar el contrato. De lo contrario, el Lie. Casiano Báez es acreedor a que se le haga la misma justicia que con dedicación logró para la causante de los demandantes Cruz Fernández. ”

Así las cosas, y celebrada la vista ordenada, el Tribunal de Primera Instancia emitió dictamen el 6 de febrero de 1995. En el mismo, valoró los servicios profesionales prestados por el licenciado Casiano en $70.00 la hora. Determinó que los honorarios del letrado debían ser satisfechos a base del principio quántum meruit. Señaló dicho foro:

“El licenciado Casiano Báez testificó que los servicios prestados en este caso ascienden aproximadamente a las 4,000 horas. En vista de que éste no presentó documento alguno sobre registro de horas trabajadas en el 
*718
mismo, nos corresponde, entonces, fijar las mismas. Para ello tomamos en consideración la labor que el abogado realizó en el caso de filiación y las instancias posteriores a la muerte de ésta, en beneficio de los demandantes (herederos) hasta que se le requirió y se hizo efectiva su renuncia...

Valoramos los servicios por hora del Ledo. Flor Casiano comparándolos con los cobrados por otros abogados en ese tiempo en esta jurisdicción en caso de similar complejidad en $70.00 la hora. Calculamos a base de la prueba desfilada que el abogado trabajó en el caso, un total de 2,500 horas. ”

En su consecuencia, condenó a la parte apelada satisfacer la suma de $175,000 por concepto de honorarios de abogado. De dicha determinación, ambas partes acudieron ante este Tribunal. 
El 26 de noviembre de 1997, esta Curia revocó el dictamen emitido, ordenando se celebrara una vista evidenciaría donde ambas partes pudieran presentar prueba sobre el tiempo invertido y el valor razonable de los servicios prestados por el licenciado Casiano.
De dicho dictamen se recurrió al Tribunal Supremo quien, mediante Resolución de 17 de julio de 1998, confirmó la determinación de este Tribunal. Señaló dicho Foro:

“Una vez devuelto el caso al foro de instancia, el interventor Lie. Flor Casiano Báez podrá demostrarle al mismo, mediante evidencia directa, circunstancial y/o pericial, la cantidad de horas trabajadas y el valor razonable de las mismas. ”

La vista ordenada fue celebrada el 12 de marzo de 2001. El Tribunal de Primera Instancia dictó Sentencia Parcial el 18 de julio de 2001, notificada el 24 de julio de 2001.
Examinada la prueba testifical y documental, el tribunal a quo emitió las siguientes determinaciones de hecho:

“1. Para el año 1981, la causante Rosa Esther Fernández Sánchez, madre de los demandantes, contrató los servicios profesionales del interventor, Ledo. Flor Casiano Báez, para investigar, gestionar y reclamar su filiación y todos los derechos que le correspondieran, si algunos, con relación a su supuesto padre Francisco Fernández Rodríguez, ella de 59 años y él de 81 para aquella época.

2. Los honorarios de abogado a pagar al interventor, Ledo. Flor Casiano Báez, serían una tercera parte (1/3) del total del valor o precio de bienes adjudicados a la cliente por producto del pleito de filiación. La condición económica de la causante no le permitía costear honorarios de abogados ni los gastos que ello acarreaba.

3. El 10 de febrero de 1982 se inició el pleito con la radicación en este Tribunal de una demanda de filiación y daños y perjuicios, mediante el caso RF82-205.

4. La controversia en el caso de filiación resultó complicada, recayendo finalmente sentencia favorable a la cliente del Ledo. Casiano, el 29 de febrero de 1984. Se desestimó la acción de daños y perjuicios. En el intervalo, la cliente, con la representación legal del interventor, radicó varios recursos para proteger y evitar el despilfarro y dilapidación de los bienes de quien alegaba ser su padre. (R-83-158, CS-83-2456, 0-84-122, R-84-68, R-84-148).

5. Luego se radicó el Recurso 0-85-376 ante el Tribunal Supremo de Puerto Rico y el caso que nos ocupa CS85-1731, con el fin de obtener la declaración de incapacidad del padre de la cliente, tutoría y la administración y adjudicación de los bienes y derechos que le correspondieran como producto de la filiación 
*719
obtenida. Ello motivó otros recursos ante él Tribunal Supremo de Puerto Rico, (R-87-513, CE-87-585, R-87-595), y la Sala de Distrito de Yauco (CD86-166, CD87-406).

6. La causante de los demandantes murió el 9 de febrero de 1988 y su padre, el 12 de noviembre de 1989, habiendo tramitado el interventor, Ledo. Flor Casiano Báez, las respectivas declaratorias de herederos y sustitución de partes con los demandantes, únicos herederos. (CS88-117, CS90-04). El Ledo. Flor Casiano Báez continuó con la representación legal de los demandantes, con el consentimiento de éstos. Los demandantes no repudiaron la herencia.

7. El 9 de abril de 1990, los demandantes reciben los bienes, producto del caso de filiación, por la suma de $719,239.14, según declarados en la planilla de caudal relicto.

8. El 30 de enero de 1991 se rinde informe de ingresos y gastos al Tribunal sobre los bienes, obtenidos y al momento de dialogar entre los demandantes y el interventor sobre la liquidación y el pago de los honorarios de abogados, surge la controversia entre éstos que motiva la renuncia de la representación legal y la radicación de la demanda de intervención por el Ledo. Flor Casiano Báez, en cobro de los honorarios por los servicios prestados.

9. Luego de una serie de trámites, el 6 de febrero de 1995, el Tribunal dictó sentencia parcial, en la que dejó sin efecto el contrato de honorarios contingentes y valoró los servicios por hora del Ledo. Flor Casiano Báez, en $70.00 la hora, estimando un total de 2,500 horas trabajadas, con un valor de $175,000.00. El Ledo. Flor Casiano Báez estimó en 4,000 las horas trabajadas.

10. Ambas partes recurrieron al Tribunal de Circuito de Apelaciones, y éste dejó sin efecto la sentencia recurrida, y se devolvió el caso para la celebración de una vista evidenciaría, para establecer la cantidad de horas trabajadas por el interventor, Ledo. Flor Casiano Báez, que podían ser más o menos, y el valor razonable de éstas. La misma fue avalada por el Tribunal Supremo de Puerto Rico.

11. El interventor, Ledo. Flor Casiano Báez, trabajó la cantidad de horas reclamadas en un período de once años en beneficio de los demandantes. El Tribunal determina que-trabajó un total de 1688 horas.

12. Se establece en $70.00 el valor razonable por hora trabajada por el interventor en aquellos tiempos, teniendo en cuenta los criterios que más adelante se señalan. ”

Mediante dicho dictamen, el Tribunal de Primera Instancia condenó a la parte apelante satisfacer la suma de $118,160 por servicios prestados, más el pago de interés legal por la cantidad de $12,406.80. De dicha cantidad, al licenciado Casiano se le había adelantado la suma de $50,000, adeudándose la diferencia.
Insatisfecho con este dictamen, el licenciado Casiano presentó ante este Tribunal recurso de apelación el 23 de agosto de 2001. 
Conforme reseñamos, ambos recursos fueron consolidados por esta Curia mediante Orden emitida el 5 de diciembre del 2001. Las partes han comparecido; estando en posición para resolver, procedemos a hacerlo.
II
En su escrito, el licenciado Casiano plantea que incidió el Tribunal de Primera Instancia al dictaminar que las horas trabajadas por él, en beneficio de la parte apelada en un período de once (11) años, fueron 1,668 cuando la prueba que tuvo ante sí, no controvertida, establece las mismas en la cantidad de 3,669; al determinar y ordenar el pago de intereses por un solo año cuando los mismos proceden a partir de la fecha en que se origina la causa de acción, ya sea el 9 de abril de 1990, a saber cuando la parte apelada recibe su capital o el 21 de julio *720 de 1992, cuando se interpone la demanda de autos; y al no imponerle honorarios de abogados a la parte apelada por los procedimientos de la intervención cuando han demostrado su temeridad.
III
El Canon 24 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX, establece los factores que han de ser tomados en consideración al fijar los honorarios: el tiempo y trabajo requeridos; la novedad y dificultad de las cuestiones implicadas; la habilidad que requiere conducir el caso propiamente; los honorarios que se acostumbran cobrar en el distrito judicial por servicios similares; la cuantía envuelta; la contingencia o certeza de la compensación, y la naturaleza de la gestión profesional si es puramente casual o para un cliente constante, entre otras.
En ausencia de un pacto expreso sobre la cuantía que debe ser cobrada por los servicios profesionales aplica el Art. 1473 del Código Civil, 31 L.P.R.A. see. 4111, que establece, en lo pertinente: ...“en cuanto a los servicios profesionales se estará para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener enjuicio de la otra parte,...el importe razonable de dichos servicios” .
En este precepto queda plasmado el principio de quántum meruit (tanto como se merece) el cual establece el derecho a reclamar el valor razonable de los servicios prestados. Méndez v. Morales, 142 D.P.R. 26 (1996); Pérez v. Col. Cirujanos Dentistas de P.R., 131 D.P.R. 545 (1992). De no poderse estimar los honorarios de abogado a base de cuotalitis, procede que los tribunales estimen una razonable compensación que retribuya adecuadamente la labor realizada por el abogado. Colón v. All American Life & Cas. Co., 110 D.P.R. 772, 777 (1981).
En Zequeira v. C.R.U.V., 83 D.P.R. 878 (1961), el Tribunal Supremo expresó que ”[e]l valor razonable (quántum meruit) se usa cuando se trata de una obligación implícita que surge de un contrato invalidado por alguna irregularidad en la forma de ejecutarlo”. (Citas omitidas.)
Para determinar la razonabilidad de los honorarios a los que tiene derecho un abogado por los servicios profesionales prestados, los tribunales pueden considerar los siguientes factores: (1) dificultad y complejidad de las cuestiones envueltas; (2) tiempo y trabajos requeridos; (3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares; (4) experiencia y prestigio del abogado. Véase, Pérez v. Col. Cirujanos Dentistas de P.R., supra, nota núm. 14.
IV
La Regla 44.3 de las de Procedimiento Civil, dispone, en lo pertinente:

“(a) Se incluirán intereses al tipo legal en toda sentencia que ordena el pago de dinero a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, sin incluir costas y honorarios de abogado.

(b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo [correspondiente] ... desde que haya surgido la causa de acción en todo caso de cobro de dinero ... hasta la fecha en que se dicte la sentencia a computarse sobre la cuantía de la sentencia... ”.

32 L.P.R.A. Ap. Ill, R. 44.3.
El Tribunal Supremo de Puerto Rico ha resuelto que, con independencia a la actuación temeraria de un demandado, la imposición de los intereses mencionados en el citado precepto es mandatoria y que.los mismos pueden ser recobrados aun cuando no hubieran sido mencionados en la sentencia. Quiñones López v. Manzano *721 Pozas, 141 D.P.R. 139 (1996); Riley v. Rodriguez Pacheco, 124 D.P.R. 733 (1989); Municipio de Mayagüez v. Rivera, 113 D.P.R. 467 (1982).
Ahora bien, los mismos se imponen desde la fecha de la sentencia, no de la demanda. Quiñones López v. Manzano Posas, supra. Se fijan al interés legal vigente a la fecha de la sentencia, y se computan hasta el día en que la sentencia es finalmente satisfecha. Id.; Riley v. Rodríguez Pacheco, supra. Si la parte quiere librarse de esta condena, viene obligada a consignar el monto de la sentencia durante cualquier trámite apelativo. Riley v. Rodríguez Pacheco, supra; Zequeira v. C.R.U.V., 95 D.P.R. 738, 744 (1968).
Por otro lado, la Regla 44.1(d) de las de Procedimiento Civil, supra, dispone:

“(a) ...

(d) Honorarios de abogado. En caso que cualquier parte haya procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. ”

32 L.P.R.A. Ap. m, R. 44.1(d).
La condena en honorarios de abogado e intereses bajo las disposiciones anteriores, ha expresado el Tribunal Supremo de Puerto Rico, es imperativa cuando el tribunal sentenciador concluye que una parte ha sido temeraria. Dicha determinación ha de inferirse del pronunciamiento del tribunal imponiendo la condena de honorarios de abogado y/o de intereses. Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. (1999), 99 J.T.S. 107; Pérez v. Col. de Cirujanos Dentistas de P.R., supra.
El propósito de la imposición de honorarios de abogado es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, gastos trabajo e inconveniencias de un pleito. Véanse, Fernández v. S.J. Cement, 118 D.P.R. 713, 718 (1987); Soto v. Lugo, 76 D.P.R. 444, 448 (1954).
El Tribunal Supremo ha expresado que la acción que amerita la imposición de este tipo de condena es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Véase, Fernández v. San Juan Cement Co., Inc., supra, a las págs. 718-719; véase, además, Rivera Rodríguez v. Tiendas Pitusa, Inc., supra.
No constituye temeridad cuando existe una discrepancia honesta en tomo al derecho aplicable o cuando se trata de una cuestión novel, no resuelta por el Tribunal Supremo. Soc. de Gananciales v. Royal Bank of P.R., 145 D.P.R. 178.(1998).
El Tribunal de Primera Instancia goza de amplia discreción en este tipo de determinaciones. Véanse, Miranda v. Estado Libre Asociado, 137 D.P.R. 700 (1994); Ramírez v. Club Cala de Palmas, 123 D.P.R. 339 (1989); Fernández v. San Juan Cement, supra; Raluán Corp. v. Feliciano, 111 D.P.R. 598 (1981). Por su parte, un tribunal apelativo sólo intervendrá en este tipo de caso cuando el Tribunal de Primera Instancia hubiera abusado de su facultad. Ramos Báez v. Bossolo López, 143 D.P.R. 567 (1997).
V
Con este trasfondo fáctico y normativo, analicemos la controversia del caso ante nos.
En su escrito, el licenciado Casiano, en relación al primer error, nos señala que en la vista celebrada testificó sobre la cantidad de horas trabajadas y presentó en evidencia el correspondiente documento bajo juramento.. Dicho documento refleja que la cantidad de horas trabajadas durante 11 años fue de 3,669. *722 Argumenta que lo anterior resultó en beneficio de la parte apelada. Entiende que, demostrada la cantidad de horas trabajadas, procedía solamente que el tribunal a quo, conforme lo hizo, estableciera el valor razonable de las mismas.
En primer término, queremos señalar que estamos conscientes de que la relación contractual entre un abogado y su cliente es una sui generis y debe ser atemperada a las exigencias éticas de nuestra profesión, lo que justifica la intervención moderadora de los tribunales, siempre que ello resulte necesario. Méndez v. Morales, supra, a las págs. 34-35; López de Victoria v. Rodríguez, 113 D.P.R. 265, 270 (1982).
Analicemos, pues, la determinación del Tribunal de Primera Instancia de reducir el quántum de horas trabajadas por el licenciado Casiano, conforme la prueba presentada en el caso. A tales efectos, entendemos pertinente reseñar, en síntesis, los incidentes que dieron génesis al pleito de autos.
En el año 1981, la causante que, para dicha fecha, contaba con cincuenta y nueve (59) años, contrató los servicios profesionales del licenciado Casiano para investigar, gestionar y reclamar su filiación y todos los derechos que corresponderían, si alguno, con relación a su supuesto padre, Francisco Fernández Rodríguez. Para esa fecha, don Francisco Fernández Rodríguez contaba con ochenta y un (81) años de edad. Sobre el particular, surge de la transcripción de la prueba lo siguiente:

“LCDO. FLOR CASIANO BAEZ

R. Está muy bien. Pues entonces ella me visitó y me contrató con relación a un caso que ella tenía sobre, que ella había, era hija según me informó así superficialmente que era hija de un señor que le llamaban Francisco Fernández, que este señor era una persona que está vivo, que tenía sobre ochenta años y que era un español que había venido en el 1998 [1898] a Puerto Rico y que nunca la había....

LCDO. FLOR CASIANO BAEZ

S. Si, 1898 aproximadamente y que nunca la había querido reconocer, que los abogados no en el área de Yauco no habían asumido nadie representación, nadie quería porque era una persona sumamente influyente....

T. Influyente sí, correcto. Entonces en esas circunstancias que le habían informado de que yo podía asumir su representación legal y allí, pues, inicia nuestra gestión con esta señora. Le informamos que íbamos a investigar, que eso era un caso en esas circunstancias requería una investigación amplia.... ”.

Los honorarios de abogado se fijaron en una tercera (1/3) parte del total del valor o precio de bienes adjudicados a la causante producto del pleito de filiación. La condición económica de la causante no le permitía costear honorarios de abogado ni los gastos que la litigación acarreaba.
El 10 de febrero de 1982, y en el caso Civil Núm. RF-82-805, la causante, por conducto de su representación legal, licenciado Casiano, presentó la demanda sobre filiación y daños y perjuicios contra su alegado padre, don Francisco Fernández Rodríguez.
El 28 de febrero de 1983, el Tribunal de Primera Instancia declaró sin lugar la demanda de filiación. El licenciado Casiano, en representación de la causante, solicitó la revisión de dicha sentencia ante el Tribunal Supremo, quien dejó sin efecto la misma y ordenó la devolución del caso para que se hicieran las pruebas científicas sobre determinación de paternidad.
Así las cosas, y mientras acontecían estos sucesos, el 14 de noviembre de 1983, la causante y el licenciado Casiano acordaron reducir a escrito el contrato de servicios profesionales que regiría la relación entre las partes.
*723 Durante cuatro (4) años se estuvo pleiteando el caso de filiación, el cual resultó uno. complicado recayendo finalmente Sentencia favorable. Posteriormente, el licenciado Casiano continuó realizando gestiones en favor de la causante, entre ellas la presentación de una solicitud de remedios bajo la Regla 56 de las de Procedimiento Civil, 32 L.P.R.A. Ap. IV, R. 56, y un recurso de injunction con el propósito de evitar que don Francisco Fernández Rodríguez y otros, dispusieran de sus bienes en perjuicio de la causante. Luego de numerosos trámites, incluyendo la presentación de varias solicitudes de revisión ante el Tribunal Supremo, el tribunal a quo concedió el remedio solicitado bajo la Regla 56 de Procedimiento Civil, supra, y le ordenó a don Francisco Fernández Rodríguez, que se abstuviera de realizar enajenaciones, gravámenes y disposiciones de sus bienes sin autorización previa del tribunal.
El 15 de agosto de 1985, en el Caso Civil Núm. JAC-85-1731, la causante presentó otra demanda contra su padre y otros demandados, la cual fue posteriormente enmendada, solicitando que se declarara a su padre incapacitado para administrar sus bienes, se declararan nulas todas las acciones realizadas de mala fe e indebidamente por la parte demandada, y se le nombrara tutora de su padre.
Durante estos trámites, el 9 de febrero de 1988, la causante falleció. El 14 de febrero de 1989, don Francisco Fernández Rodríguez fue declarado incapaz y, varios meses después, murió.
El 3 de enero de 1990, se emitió sentencia declaratoria mediante la cual se declaró a Angel Luis y José Angel Cruz Fernández, hijos de la causante, únicos y universales herederos de don Francisco Fernández Rodríguez. Estos sustituyeron a su madre en el Caso Núm. JAC-85-1731. Angel Luis Cruz Fernández fue nombrado administrador provisional del caudal relicto del finado. El 9 de abril de 1990, la parte apelada recibió los bienes, productos del caso de filiación. El 30 de enero de 1991, se rindió el informe de ingresos y gastos obtenidos. Al momento de dialogar Angel Luis y José Angel Cruz Fernández, hijos de la causante, con el licenciado Casiano sobre la liquidación y el pago de los honorarios de abogados, surgió la controversia entre éstos que motivó la renuncia de la representación legal y la presentación de la demanda de intervención por el licenciado Casiano, en cobro de los honorarios por los servicios prestados.
Esbozado lo anterior, llama la atención que, desde un principio, se perfilaba que el pleito de filiación incoado sería uno de naturaleza compleja. Los trámites legales posteriores así lo confirman. De manera meridiana se desprende del récord que el mismo no era un caso de filiación simple.
Sumado a lo anterior, la situación económica de la causante, conforme hemos indicado, no le permitía costear honorarios de abogado ni los gastos que la litigación acarreaba. A tales efectos, en el momento de contratar, el licenciado Casiano y la causante acordaron un contrato a base de honorarios contingentes. Sabido es que bajo dicho contrato, el abogado es compensado si gana el caso, o sea, se hace partícipe en el resultado del pleito para percibir un porciento del crédito de su cliente. Pérez v. Col. Cirujanos Dentistas de P.R., supra. Si el abogado pierde el caso en los méritos, éste no tiene derecho a cobrar nada, pues el pacto del cuotalitis asocia al abogado a la suerte del proceso. Id.
En el caso de autos, el licenciado Casiano asumió todos los riesgos y gastos. Al no ser un pleito sencillo, debía dedicarle un esfuerzo grande. Sin embargo, de obtenerse una dictamen a favor de la causante, tenía una expectativa de que sus honorarios serían de una tercera (1/3) del total del valor o precio de bienes adjudicados a la causante producto del pleito de filiación. En su consecuencia, desde un principio, el licenciado Casiano conocía que, de emitirse dictamen a favor de la causante, los bienes obtenidos serían numerosos, por lo que, reiteramos, desde esa etapa, el licenciado Casiano tenía una expectativa de que sus honorarios serían elevados.
Por otro lado, la causante, quien acudió en principio donde el licenciado Casiano, estuvo conteste en *724 pagarle dicha cantidad ratificándolo posteriormente al suscribir el contrato. De hecho, y sólo para efectos de argumentación, de haberse determinado que el contrato era válido, los honorarios de abogado hubieran ascendido a $239,746.38. 
Hemos señalado lo anterior, toda vez que, en su comparecencia a esta Curia, la parte apelada descansa su argumentación en los honorarios que se cobran en un pleito de filiación y en la calidad del servicio prestado por el Ledo. Casiano, alegándose que esto último fue “uno de los factores que disgustaron a sus clientes [parte apelante] y los llevaron a requerirle su renuncia, fue la falta de comunicación con ellos”. Sin embargo, obra evidencia en el récord que los problemas entre las partes comenzaron cuando el licenciado Casiano presentó la liquidación y el pago de los honorarios de abogados.
Dicho lo anterior, pasemos ahora a revisar la determinación emitida. Aunque el Tribunal de Primera Instancia, en su dictamen, siguió la doctrina prevaleciente y en otras condiciones este Tribunal no intervendría con la decisión, los hechos tan particulares del caso de marras ameritaban una desviación de dicha doctrina.
Comencemos señalando que el caso de marras envuelve aspectos de naturaleza subjetiva. Durante su trámite procesal, dos (2) magistrados diferentes establecieron la cantidad de horas trabajadas por el licenciado Casiano. Cada magistrado valorizó las horas trabajadas de manera distinta. En la primera determinación, el 6 de febrero de 1995, un magistrado de instancia estimó las horas en 2,500 horas. En la Sentencia que nos ocupa, el magistrado de instancia las valorizó en 1,600 horas. Por otro lado, este Tribunal, en el dictamen emitido en el caso KLAN-95-00127 intimó que la cantidad podría resultar mayor o menor que la establecida de 2,500 horas.
Por otro lado, abona a nuestra posición que el Tribunal Supremo al denegar el certiorari solicitado señaló que: “[u]na vez devuelto el caso al foro de instancia, el interventor Ledo. Flor Casiano Báez, podrá demostrarle al mismo, mediante evidencia directa, circunstancial y/o pericial, la cantidad de horas trabajadas y el valor razonable de las mismas. ”
En la vista celebrada, el licenciado Casiano testificó sobre la cantidad de horas trabajadas y presentó, a su vez, en evidencia el correspondiente documento bajo juramento demostrativo de las horas trabajadas. La parte apelada no intentó impugnar la información ofrecida.
A modo de ejemplo, surge del testimonio del licenciado Casiano lo siguiente:

“LCDO. FLOR CASIANO BAEZ

R. Durante ese año, pues, lo que hicimos fue en el 1981, durante todo el tiempo lo que hicimos fue hacer investigaciones para localizar las personas para saber de qué se trataba, de quién se trataba. Hicimos una investigación que realmente durante todo el año para localizar personas, localizar lugares, partes y todo durante el 1981, yo trabajé aproximadamente en la investigación como ciento sesenta horas...

R. Eso es correcto, durante el 1981., Y luego de allí, de haber hecho eso en el 1981, comenzamos para febrero de 1982, yo me reúno con los clientes, me había reunido durante la investigación y comienzo radicando.... ”.

Lo anterior es reflejo que en la vista del caso, el licenciado Casiano presentó prueba de todas las gestiones realizadas por él durante los años trabajados. Asimismo, presentó declaración jurada especificando al detalle dicha labor.
Sin embargo, y conforme hemos reseñado, la prueba de la parte apelada descansó en cuanto cobraba un abogado por un caso de filiación y en la calidad del servicio prestado.
*725 En virtud de los anteriormente expuesto, concluimos que el error fue cometido. En el caso de autos, y ante su particularidad, entendemos que el dictamen emitido por el juzgador debía ceñirse a la pmeba vertida por las partes. Si bien es cierto que el ordenamiento jurídico vigente concede una basta discreción al juzgador a la hora de aquilatar y evaluar la pmeba, no es menos cierto que su decisión tiene que sujetarse a la misma.
En conclusión, somos de opinión que la cantidad de horas reclamadas por el licenciado Casiano no es una, de su faz, irrazonable, dada la expectativa que tenía; la dificultad y complejidad del servicio brindado; tiempo y trabajos que le fue requeridos; así como, la experiencia y pericia del licenciado Casiano. La parte apelada tuvo la oportunidad de cuestionar la razonabilidad de lo sostenido por el licenciado Casiano, más no hizo uso de la misma.
VI
Como segundo y tercer error, el licenciado Casiano nos señala que incidió el tribunal a quo al determinar y ordenar el pago de intereses por un sólo año cuando los mismos procedían a partir de la fecha en que.se originó la causa de acción del pleito de autos, a saber, cuando la parte apelada recibió su capital (9 de abril de 1990), o en la alternativa, cuando se interpuso la demanda de autos (21 de julio de 1992); y el no imponerle honorarios de abogados a la parte apelada por los procedimientos de la intervención cuando han demostrado su temeridad. Ambos señalamientos serán discutidos en conjunto por estar estrechamente relacionados y envuelven el concepto de temeridad.
Surge de la Sentencia que el tribunal a quo impuso el “pago de interés legal por la cantidad de $12,406.80 a base de 10.50% anual.” Dicho foro no determinó que la parte apelada hubiera sido temeraria en la litigación del presente pleito. Si bien es cierto que la adjudicación de temeridad puede inferirse del pronunciamiento del tribunal imponiendo la condena de honorarios de abogado y/o de intereses, en el caso de autos no podríamos realizar dicha inferencia. Rivera v. Tiendas Pitusa, Inc., supra.
A fin de que se entienda implícita la adjudicación del Tribunal de Primera Instancia, a los efectos de que una parte ha sido temeraria mediante la imposición del pago de interés legal, el mismo debe ser retroactivo. En los casos de daños y perjuicios desde la fecha en que se presentó la demanda y en las acciones por cobro de dinero desde el momento en que surgió la causa de acción. Regla 44.3(b) de las de Procedimiento Civil, supra.
Por otro lado, si la imposición del pago de interés legal es prospectiva, hablamos del interés legal que habrá de pagarse, siempre que un tribunal dicte sentencia ordenando el pago de una suma de dinero. El mismo se computará desde la fecha en que se dictó sentencia y hasta que la misma sea satisfecha. Riley v. Rodríguez, supra.
En el caso de autos, si el Tribunal de Primera Instancia hubiera pretendido aplicar el inciso (b) de la Regla 44.3, supra, con su dictamen, hubiese condenado a la parte apelada al pago retroactivo del interés legal desde la fecha en que surgió la causa de acción. Sin embargo, el tribunal a quo se limitó a ordenar el pago de la cantidad correspondiente al interés legal anual a razón de la suma determinada en la Sentencia.
Ante el lenguaje utilizado por el Tribunal de Primera Instancia en su Sentencia, y dado a que la condena imponiendo el pago de interés legal por temeridad es una discrecional del foro de instancia, entendemos que la misma no procede en este caso. Torres Ortiz v. Estado Libre Asociado, 136 D.P.R. 556 (1994); Pérez v. Col. de Cirujanos Dentales de P.R., supra. Por iguales fundamentos, declaramos improcedente la imposición de honorarios de abogado.
En su consecuencia, el interés legal, conforme el ordenamiento jurídico prevaleciente, se debía imponer desde la fecha de la Sentencia, por lo que no incidió el Tribunal de Primera Instancia al computarlos.
*726 VII
Por los fundamentos antes esbozados, se Revoca la Sentencia emitida y se condena a la parte apelada pagar al licenciado Casiano la suma de $256,830 por concepto de servicios prestados. De esta cantidad, la parte apelada había adelantado al licenciado Casiano la suma de $50,000, por lo que debe ser deducida al monto total de la deuda.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 16
1.KLAN-95-00127 y KLAN-95-00188.
2. El 26 de noviembre de 2001, el Ledo. Casiano presentó una “Moción de Consolidación donde expuso que, posterior a la presentación del KLAN-01-000831, la parte apelada había alegado que la Sentencia Parcial emitida no le había sido notificada. A tales efectos, el Tribunal de Primera Instancia ordenó se notificara a dicha parte. Esto motivó la presentación del recurso KLAN-01-01014.
3. Dicho contrato fue declarado nulo posteriormente.
4. Dicha cantidad fue la declarada en la planilla de caudal relicto. No están computados los intereses y frutos de la cantidad recibida lo que se alega sobrepasa $1,000,000.
5. En la Sentencia emitida el 23 de enero de 1997, por el Tribunal Supremo de Puerto Rico, en el recurso RE-94-251, dicho Foro señaló: “[u]na vez más nos vemos obligados a intervenir en este caso que ha tenido un largo historial litigioso. El proceso comenzó en febrero de 1982, cuando la señora Rosa Esther Fernández Sánchez [la causante] interpuso demanda de filiación...Esperamos con nuestra intervención de hoy poner punto final al caso que comenzó hace más de catorce (14) años ”.
6. $118,160.00 x 10.5%= $12,406.80.