*1216 TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante nos, mediante petición de certiorari, los demandantes Juan Ramón De León Flores; Dulce M. Hernández Ramos; Tairí Mari De León Hernández; Gloria Hernández Ramos; la sucesión de Eugenio Hernández Báez; Carmen Gloria Ramos Salgado; Edward Rosa Santos; y Teófila Flores Ramón (en adelante, denominados en conjunto como los demandantes-peticionarios), para solicitar que revisemos una resolución emitida por el Tribunal de Primera Instancia, Sala de San Juan (Hon. Sonia Santana Sepúlveda), de fecha 13 de octubre de 2009. A este recurso le fue asignado el alfanumérico KLCE-09-01713.
Comparece antes nos, a su vez, de la misma sentencia, la Universidad de Puerto Rico (en adelante, U.P.R.) mediante recurso de certiorari que le fue asignado el alfanumérico KLCE-09-01747.
En la resolución recurrida, el foro a quo determinó lo siguiente:
“1) Que los pagos reclamados mediante la moción de ejecución de sentencia en exceso de $91,601.00 deben ser sufragados por la U.P.R., ya que A.G.S.M. solamente es responsable hasta el límite de su cubierta estipulado en la póliza de seguro suscrita con la U.P.R. Añadió que, el 16 de diciembre de 2003, la A.G.S.M. consignó en el Tribunal la cantidad de $91,601, equivalente al balance restante de la cubierta, luego de haber efectuado durante el año póliza 1985-1986 varios pagos por reclamaciones contra la U.P.R. por la cantidad de $408,399;
2) que el interés a pagarse sobre la sentencia emitida en el caso a favor de los demandantes, es aquél vigente al momento de dictarse la misma, el 29 de septiembre de 2003, el cual era el uno por ciento (1%). Explicó que la teoría de los demandantes, en cuanto a que el interés aplicable se computa por semestres, está apoyada en jurisprudencia que sólo es aplicable al pago de la compensación por expropiación forzosa al amparo del derecho constitucional de justa compensación; y
3) que, no habiendo prevalecido la parte demandante en las etapas apelativas, no procedía la suma de $2,495 reclamada como costas en apelación. Ello, luego de acoger como una reconsideración la moción en oposición a las costas presentada por la U.P.R.”
Por recurrir ambos recursos de la misma resolución, el 9 de diciembre de 2009, ordenamos la consolidación de los mismos. El 8 de febrero de 2010, la U.P.R. presentó su escrito de oposición al recurso presentado por los demandantes. Posteriormente, la Asociación de Garantías de Seguros Misceláneos (A.G.S.M.), mediante comparecencia de 25 de febrero de 2010, informó que se unía a la mencionada oposición. No obstante, solicitó un término de 15 días para presentar la oposición al recurso de certiorari presentado por dicho centro docente. Habiendo comparecido la A.S.G.M., nos disponemos a resolver ambos recursos en sus méritos.
I
Hechos
Expondremos brevemente los hechos pertinentes a la controversia ente nos.
El 23 de septiembre de 2003, el T.P.I. emitió una sentencia a favor de la parte demandante y en contra de la parte demandada del epígrafe por la cantidad de $1,645,000 en los casos consolidados KDP88-0374, KDP88-0443 y KDP88-0502. Dicha sentencia fue confirmada por este Tribunal y, posteriormente, por el Tribunal Supremo. [1]
Así las cosas, el 31 de octubre de 2008, los demandantes-peticionarios en el caso KDP88Ó374 presentaron un memorando suplementario de costas y gastos incurridos en apelación por la cantidad de $2,495. Ante la falta de oposición de los demandados, el T.P.I. despachó con un “Como se Pide” el referido memorando, mediante *1217 orden de 11 de marzo de 2009. El 16 de marzo de 2009, entre otras cosas, los demandantes también presentaron una solicitud de ejecución de sentencia.
Por otra parte, el 24 de marzo de 2009, la codemandada U.P.R. compareció por escrito para oponerse al pago de la suma de $2,495 reclamada como costas en apelación por los demandantes. Adujo como fundamento a su oposición que éstos no habían prevalecido ni ante el Tribunal Apelativo ni ante el Tribunal Supremo. Los demandantes replicaron a dicha oposición.
Luego de varios trámites procesales, mediante moción de 29 de marzo de 2009, la U.P.R. consignó la cantidad de $791,250 la cual, de acuerdo con sus cálculos, incluía el pago de la sentencia principal en su contra, más intereses y menos las costas. Según dicha parte, el balance pendiente de la sentencia, ascendente a $895,000 debía ser pagado por la A.G.S.M., sucesor con interés de la extinta Corporación Insular de Seguros (C.I.S.), con quien suscribió la póliza de seguros. Dicha parte codemandada también presentó una moción para oponerse al memorando de costas en apelación presentado por los demandantes, bajo el fundamento de que éstos no prevalecieron ante los foros apelativos.
Los demandantes presentaron sendas oposiciones a la consignación hecha por la U.P.R. y a los planteamientos sobre el memorando de costas. Entre los argumentos esgrimidos, se destacan: el que la sentencia fixe emitida solidariamente contra los codemandados; que el cómputo de intereses efectuado por la U.P.R. es incorrecto, ya que los intereses se computan por semestres y no a un interés fijo; y que dicho centro docente renunció a su oposición al memorando de costas por no haber presentado su oposición a tiempo.
La A.G.S.M. también se opuso a la consignación de la U.P.R. y, en síntesis, argumentó que no se podían embargar fondos de dicha institución; que la U.P.R. había reconocido los límites bajo su póliza en moción presentada por ella, el 9 de agosto de 1996; que los demandados fueron condenados al pago de la sentencia de manera solidaria; que la sentencia fue emitida contra la A.G.S.M. hasta un tope de $150,000: y que, conforme a la jurisprudencia aplicable, las limitaciones de pago bajo una póliza, conforme al Capítulo 38 del Código de Seguros, surgen de la póliza suscrita entre las partes.
Tras la celebración de una vista para discutir ciertos asuntos pendientes y la presentación de varios escritos de las partes en apoyo de sus respectivas posiciones, el T.P.I. emitió la resolución recurrida.
Inconforme con dicha determinación, los demandantes-peticionarios acuden ante nos mediante petición de certiorari núm. KLCE-09-01713, en la que alegan que erró el T.P.I. al:
“1) Determinar que el interés a pagarse en este caso es aquél vigente al momento de dictarse la sentencia, el 29 de diciembre de 2003, el cual era el uno por ciento (1%).
2) Resolver que los intereses por sentencia no se han de computar por semestres conforme al Reglamento de la Oficina de Instituciones Financieras y los casos de Autoridad de Carreteras v. Adquisición..., 2008 J.T.S. 25 Per Curiam de 17 de enero de 2008; Autoridad de Carreteras v. Adquisición..., 2007 J.T.S. 184, y E.L.A. v. Rexco, 137 D.P.R. 683 (1994), que resuelven que el por ciento de interés aplicable a la sentencia se computa por semestres o que los mismos deberán pagarse según éstos varían de semestre en semestre hasta su pago total.
3) Resolver que la jurisprudencia citada por los demandantes para apoyar su posición es sólo aplicable al pago de la compensación por expropiación forzosa al amparo del derecho constitucional a la justa compensación.
4) Resolver que la demandada Asociación de Garantías de Seguros Misceláneos ya pagó los intereses sobre la suma por ella depositada.
*1218 5) Reconsiderar la orden que aprobó el memorando suplementario de costas en apelación por la suma de $2,945.
6) Al no conceder las costas en apelación cuando contrario a lo que determina el TPI, los demandantes sí prevalecieron en sus planteamientos ante los foros apelativos cuando lograron que contrario a lo peticionado por las demandadas el monto de la sentencia no fue rebajado y la sentencia fue confirmada.
7) Reconsiderar la aprobación de las costas cuando los demandados no se opusieron dentro del término dispuesto por ley, por lo que el memorando fue aprobado por el tribunal.
8) Al no imponer honorarios de abogado por temeridad a los demandados UPR y AGSM.”
Por su parte, en el recurso de certiorari núm. KLCE-09-01747, la U.P.R. alega que incidió el foro a quo al:
“1) Determinar que la Asociación no responde por la diferencia del monto de la sentencia no consignado por la UPR, pues esa determinación es contraria a lo dispuesto en la sentencia de 29 de septiembre de 2009, la cual es final, firme e inapelable.
2) Al negarle a la UPR la oportunidad de que se ventilara y adjudicara en los méritos la controversia sobre el alegado agotamiento de los límites de agregado de la póliza de seguros que le cobija y al tomar como una admisión de dichos límites una actuación de la Asociación de Garantías que es inoficiosa e ineficaz, sin haberse dilucidado la procedencia de la consignación efectuada por la A.G.S.M..”
n
Derecho Aplicable
A
En cuanto al pago de intereses en las sentencias, la Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.3, indica lo siguiente:
“(a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia.
La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.
[...]”. (Énfasis nuestro.)
La citada regla regula lo concerniente a la fijación del interés legal, tanto postsentencia como por temeridad. El interés postsentencia se refiere al tipo de interés que se impone a favor de la parte victoriosa en todas las sentencias que ordenen el pago de dinero. El mismo se computa sobre la cuantía de la sentencia incluyendo costas y honorarios de abogado, y se fija desde la fecha en que se dicte la sentencia hasta que se satisface la misma. Gutiérrez v. A.A.A., 167 D.P.R. 130, 136 (2006); Zequeira v. C.R.U.V., 95 D.P.R. 738, 741 (1968).
En términos generales, los intereses forman parte de la sentencia que ordena el pago de dinero y pueden ser *1219 recobrados aun cuando no se mencionen en la misma. Riley v. Rodríguez Pacheco, 124 D.P.R. 733 (1989); Municipio de Mayagüez v. Rivera, 113 D.P.R. 467 (1982). Bajo las disposiciones de la Regla 44.3(a) de Procedimiento Civil, supra, es mandatario el que un tribunal, al dictar una sentencia en que se ordene el pago de dinero, imponga el pago de interés al tipo legal sobre la cuantía de la sentencia, sin excepción de clase alguna. Municipio de Mayagüez v. Rivera, supra, a la pág. 470; P.R. & Ame. Ins. Co. v. Tribunal Superior, 84 D.P.R. 621, 622-623 (1962).
De otra parte, el Tribunal Supremo ha resuelto que, específicamente, en los casos sobre expropiación forzosa donde el período entre la incautación y el pago total del Estado exceda un semestre, el Tribunal de Primera Instancia debe considerar las variaciones en las tasas de interés durante los distintos semestres. Autoridad de Carreteras v. 8554.741 m/c, 2008 J.T.S. 25, 172 D.P.R._(2008); Autoridad de Carreteras v. 8554.741 m/c, 2007 J.T.S. 184, 172 D.P.R._(2007); E.L.A. v. Rexco Industries, Inc., 137 D.P.R. 683 (1994).
El Tribunal Supremo ha manifestado que el pago de intereses es una parte integral de la justa compensación al amparo del mandato constitucional de justa compensación. También ha indicado que justa compensación es “aquella que ponga al dueño en una posición pecuniaria tan buena como aquella en la que estaría si la propiedad no se hubiese expropiado”. (Cita omitida.) E.L.A. v. Rexco Industries, Inc., supra, a la pág. 289.
Sobre la manera de computar los intereses a pagar, en Autoridad de Carreteras v. 8554.741 m/c, 2007 J.T.S. 184, supra, el Tribunal Supremo explicó que:
“En E.L.A. v. Rexco, supra, dispusimos que las fluctuaciones en el mercado tienen que ser consideradas al computar el interés aplicable en casos de expropiación forzosa... La intención de este Tribunal fue que las tasas de interés aplicables a casos de expropiación forzosa reflejaran las fluctuaciones imperantes en el mercado de valores. Para lograr dicho objetivo, se tienen que considerar las variaciones en las tasas de interés durante los distintos semestres. De esta forma se cumple con el mandato constitucional de satisfacer una justa compensación en los casos de expropiación forzosa, consagrado en el Art. II, Sec. 9 de nuestra Constitución...”. (Énfasis nuestro.) íd., a las págs. 287-288.
A manera de atemperar la Ley de Expropiación Forzosa, de 12 de marzo de 1903, según enmendada, 32 L. P.R.A. see. 2901 et seq., a lo resuelto en E.L.A. v. Rexco Industries, Inc., supra, la Asamblea Legislativa aprobó la Ley Núm. 187 de 26 de diciembre de 1997 a esos efectos. En la Exposición de Motivos de dicha ley se expresó la intención legislativa como sigue:
“La Constitución del Estado Libre Asociado de Puerto Rico en la Sección 9, Artículo II, dispone que no se tomará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley. En cumplimiento del mandato constitucional, la “Ley de Expropiación Forzosa” de 12 de marzo de 1903, según enmendada, establece el procedimiento a seguir en estos casos. La Sección 5(a) de dicha Ley dispone el pago del seis (6) por ciento anual sobre la cantidad finalmente concedida como valor de la propiedad a contar desde la fecha de adquisición hasta la fecha del pago. Igualmente, el Artículo 5(b) establece que en el caso en que el Tribunal determine la justa compensación, el Estado Libre Asociado de Puerto Rico pague el importe entre la suma fijada por el demandante y depositada en el Tribunal como justa compensación al seis (6) por ciento de interés a contar desde la fecha de adquisición.”
El Tribunal Supremo de Puerto Rico en E.L.A. v. Rexco, 94 JTS 151 (1994), determinó que, en los casos de expropiación forzosa, “la compensación por una propiedad expropiada es aquella que ponga al dueño en una posición tan buena a la que estaría si la propiedad no se hubiese expropiado. ... Cuando la tasa prevaleciente en el mercado sobrepasa el límite legal de (6%), se menoscaba la compensación pagada al dueño. Si la tasa del mercado es menor a la legal, la ley impone al Estado satisfacer una suma mayor a la que constitucionalmente *1220 tendría que pagar.”
Expresa el Honorable Tribunal que para fines adjudicativos “es crucial la Regla 44.3 de Procedimiento Civil en cuanto incorpora el Reglamento Núm. 78-1 de la Oficina del Comisionado de Instituciones Financieras sobre intereses sobre sentencias finales y firmes, pues el reglamento visualiza los intereses a base de fluctuaciones en el mercado local”.
Por tales motivos es imprescindible la aprobación de esta medida, enmendando la Ley de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, para reconciliarla con las realidades del mercado local de conformidad con los parámetros razonables que se dispone en la Regla 44.3 de las de Procedimiento Civil.
B
Por otro lado, la Regla 44.1 de Procedimiento Civil, supra, R. 44.1, sobre el pago de costas, dispone lo siguiente:
“(a) Su concesión.- — Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe reembolsar a otro.
(b) Cómo se concederán.-La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento. El memorándum de costas se presentará bajo juramento y consignará que según el leal saber y entender del reclamante o de su abogado, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento. Si no hubiere impugnación, el tribunal aprobará el memorándum de costas, y podrá eliminar cualquier partida que considere improcedente, luego de conceder al solicitante la oportunidad de justificar la misma. Cualquier parte que no esté conforme con las costas reclamadas podrá impugnar las mismas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas. El tribunal, luego de considerar la posición de las partes, resolverá la impugnación. La resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal [de Apelaciones] mediante certiorari a ser librado a su discreción, y de ningún otro modo. La revisión de la resolución deberá tramitarse conjuntamente con cualquier otro recurso que haya sido establecido contra la sentencia y en caso de que no se establezca recurso alguno podrá siempre recurrirse de la resolución sobre costas.
(c) En apelación.-La. parte a cuyo favor se dicte sentencia en apelación presentará en la sala del Tribunal de Primera Instancia que decidió el caso inicialmente y notificará a la parte contraria, dentro del término jurisdiccional de diez (10) días contados a partir de la devolución del mandato y conforme a los criterios establecidos en el inciso (b) anterior, una relación o memorándum de todas las partidas de gastos y desembolso necesarios incurridos para la tramitación de la apelación. El memorándum de costas se presentará bajo juramento, y su impugnación se formulará y resolverá en la misma forma prescrita en la Regla 44.1(b). La resolución que emita el Tribunal de Primera Instancia podrá revisarse según se dispone en el inciso (b). La resolución que emita el Tribunal [de Apelaciones] podrá revisarse mediante certiorari ante el Tribunal Supremo.” (Enfasis nuestro.)
Del texto anterior surge que las costas del litigio le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por las Reglas de Procedimiento Civil. El memorando de costas debe presentarse en el plazo jurisdiccional de 10 *1221 días luego del archivo en autos de copia de la notificación de la sentencia o de la devolución del mandato por parte del foro apelativo, según sea el caso. Comisionado v. Presidenta, 166 D.P.R. 513 (2005); JTP Development Corp. v. Majestic Realty Corp., 130 D.P.R. 456 (1992); Ferrer Delgado v. Tribunal Superior, 101 D.P.R. 516 (1973). Este término es improrrogable de conformidad con la Regla 68.2 de Procedimiento Civil, supra, R. 68.2. Por lo tanto, el tribunal carece de poder o autoridad legal para aprobar cualquier memorando de costas que se presente tardíamente. Pereira v. I.B.E.C., 95 D.P.R. 28 (1967).
El inciso (b) de la Regla 44.1, supra, más adelante establece que ante la ausencia de impugnación, el tribunal aprobará el memorando de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder al solicitante la oportunidad de justificar la misma. De igual forma, establece que cualquier parte que no esté conforme podrá impugnar en un término de 10 días contados a partir de aquél en que se le notifique el memorando de costas. Luego de haber considerado las posiciones de las partes, el Tribunal resolverá la impugnación. Finalmente, indica claramente que dicha resolución podrá ser revisada por el Tribunal de Apelaciones y, posteriormente, por el Tribunal Supremo.
C
La temeridad ha sido definida por nuestro Tribunal Supremo como aquella conducta obstinada y contumaz de un litigante al llevar su caso, en cualquiera de sus etapas procesales, obligando a la otra parte a litigar controversias de manera frívola o innecesaria. Domínguez v. GA Life, 157 D.P.R. 690 (2004); Bids v. Hosp. Guadalupe, 146 D.P.R. 267, 335 (1998); Torres Ortiz v. E.L.A., 136 D.P.R. 556, 565 (1994).
El ordenamiento procesal civil dispone en la Regla 44.1 de Procedimiento Civil, supra, lo siguiente:
“[...]
(d) Honorarios de abogado. -En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.”
En cuanto el alcance de revisión de la determinación que haga el foro de instancia sobre honorarios de abogado por temeridad, el Tribunal Supremo ha resuelto que ésta descansa en la discreción del tribunal, por lo que los tribunales revisores sólo intervendrán cuando surja de tal actuación un claro abuso de discreción. Rodríguez v. T.O.L.I.C., 2007 J.T.S. 104, 171 D.P.R. _ (2007); P.R. Oil v. Dayco, 164 D.P.R. 486, 511 (2005); Jarra Corp. v. Axxis Corp. 155 D.P.R. 764 (2001).
D
El Artículo 1.020 del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 102, define el contrato de seguro como aquel “mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo.” En consecuencia, el asegurado recibe protección en cuanto a su responsabilidad civil por daños causados a terceras personas. Díaz Ayala v. E.L.A., 153 D.P.R. 675 (2001); Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 153 (1996).
Respecto al alcance de la responsabilidad del asegurador frente al perjudicado, el Artículo 20.010 del Código de Seguros, supra, sec. 2001, ha caracterizado la misma como una de carácter absoluta. No obstante, la definición de “absoluto” conferida por dicha legislación, en efecto, estará circunscrita a los límites establecidos en la póliza. Por ende, el asegurador no será responsable ante el perjudicado en exceso de la cubierta establecida en el contrato de seguros. El referido artículo establece que:
“El asegurador que expidiere una póliza asegurando a una persona contra daños o perjuicios, por causa de responsabilidad legal por lesiones corporales, muerte o daños a la propiedad de una tercera persona, será *1222 absolutamente responsable cuando ocurriere una pérdida cubierta por dicha póliza, y el pago de dicha pérdida por el asegurador hasta el grado de su responsabilidad por la misma, con arreglo a la póliza, no dependerá del pago que efectúe el asegurado en virtud de sentencia fírme dictada contra él con motivo del suceso, ni dependerá de dicha sentencia.” (Énfasis nuestro.)
Más adelante, en el Artículo 20.030, supra, sec. 2003, ese mismo código dispone que:
“(1) La persona que sufriere los daños y perjuicios tendrá, a su opción, una acción directa contra el asegurador conforme a los términos y limitaciones de la póliza, acción que podrá ejercitar contra el asegurador solamente o contra éste y el asegurado conjuntamente. La acción directa contra el asegurador se podrá ejercer solamente en Puerto Rico. La responsabilidad del asegurador no excederá de aquella dispuesta en la póliza, y el tribunal deberá determinar no solamente la responsabilidad del asegurador, si que también la cuantía de la pérdida. Cualquier acción incoada conforme a esta sección estará sujeta a las condiciones de la póliza o contrato y a las defensas que pudieren alegarse por el asegurador en acción directa instada por el asegurado.
[...].” (Énfasis nuestro.)
En nuestra jurisdicción es norma reiterada que todo contrato de seguro, al igual que cualquier otro contrato, constituye ley entre las partes, siempre y cuando concurran las tres condiciones indispensables para su validez, a saber, consentimiento de las partes contratantes, objeto cierto y causa de la obligación que se genera. Arts. 1230 y 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 3451 y 3391. Véase, además, Gen. Accid. Ins. Co. P.R. v. Ramos, 148 D.P.R. 523, 531 (1999); Quiñones López v. Manzano Pozas, supra; Torres v. E.L.A., 130 D.P.R. 640, 651 (1992). Tanto el asegurador como el asegurado se obligan a cumplir con los términos y condiciones establecidos en el contrato de seguro. Quiñones López v. Manzano Pozas, supra; Torres v. E.L.A., supra.
Nuestro Código de Seguros dispone que "[tjodo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta". Art. 11.025 del Código de Seguros, supra, sec. 1125. Véase, además, Díaz Ayala v. E.L.A., supra; Quiñones López v. Manzano Pozas, supra; PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994).
En caso de dudas en la interpretación de una póliza, ésta debe resolverse de modo que se realice el propósito de la misma, que es proveer protección al asegurado. Quiñones López v. Manzano Pozas, supra, a la pág. 155. Es por eso, que no se favorecerán las interpretaciones sutiles que le permitan a las compañías aseguradoras evadir su responsabilidad. íd. Es a los tribunales a los que les corresponde buscar el sentido y significado que a las palabras de la póliza en controversia le daría una persona normal de inteligencia promedio que fuese a comprar la misma. Quiñones López v. Manzano Pozas, supra; PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra, a la pág. 902; Barreras v. Santana, 87 D.P.R. 227, 235 (1963).
De tener la póliza cláusulas ambiguas u oscuras, las mismas se deben interpretar a favor del asegurado y de la forma menos favorable al asegurador. PFZ Prop., Inc. v. Gen. Acc. Ins. Co., supra; Pagán Caraballo v. Silva Ortiz, 122 D.P.R. 105, 111 (1988); Rosario v. Atl. Southern Ins. Co. of P.R, 95 D.P.R. 759, 765 (1968). Esto surge de lo dispuesto en el Artículo 1240 del Código Civil, 31 L.P.R.A. see. 3478, el que establece que la interpretación de las cláusulas obscuras de un contrato no deberá favorecer a la parte que hubiese ocasionado la oscuridad.
Por otro lado, la Asociación de Garantías de Seguros Misceláneos es una institución creada en virtud del Artículo 38.01 del Código de Seguros, supra, sec. 3801. Según el Código de Seguros y el Tribunal Supremo en el caso Com. de Seguros v. Builders Ins. Co., 108 D.P.R. 625 (1979), se trata de una asociación compulsoria por *1223 ley compuesta por todos los aseguradores autorizados a tramitar seguros en Puerto Rico, excepto seguros de vida, incapacidad y salud. Esta asociación se creó con el propósito principal de satisfacer reclamaciones exigióles bajo pólizas de seguro contra aseguradores miembros, declarados insolventes por el Tribunal Superior, evitando así dilación y pérdidas a los reclamantes.
Para la fecha en que se suscribió el contrato de seguros entre la extinta C.I.S. y la U.P.R., el Artículo 38.080 del Código de Seguros, supra, sec. 3808, disponía lo siguiente respecto a los poderes y deberes de la A.G.S.M. cuando una compañía aseguradora adviene insolvente:
“(a) La Asociación:
(1) Vendrá obligada a pagar reclamaciones cubiertas existentes antes de la determinación de la insolvencia y las que surjan antes de la más temprana de las siguientes fechas:
(A) El final del período de treinta (30) días después de la determinación de insolvencia;
(B) la fecha de expiración de la póliza; o
(C) la fecha en que el asegurado sustituya la póliza u ocasione su cancelación.
Tal obligación se satisfará pagando al reclamante una cantidad que no excederá de ciento cincuenta mil (150,000) dólares por reclamación.
En ningún caso vendrá obligada la Asociación a pagar a un reclamante una suma en exceso de la obligación del asegurador insolvente bajo la póliza o cubierta de la cual surge la reclamación... [...]. La Asociación sólo pagará aquella cantidad de cada reclamación cubierta que exceda de cien dólares ($100)...
(2) Se considerará como el asegurador hasta el límite de su obligación en las reclamaciones cubiertas y hasta tal límite tendrá todos los derechos, poderes y obligaciones del asegurador insolvente como si éste no estuviere insolvente.
[......]”. [Énfasis nuestro.)
En Montañez v. U.P.R., 156 D.P.R. 395 (2002), el Tribunal Supremo se enfrentó a la tarea de determinar si la suma máxima de $150,000, por la cual responde la A.G.S.M. cuando sustituye a una compañía aseguradora que ha advenido a la insolvencia, se trata de una "por reclamación" o una por "accidente u ocurrencia". Al efectuar su análisis, indicó lo siguiente:
“[•••]
La distinción fundamental entre los conceptos por "accidente u ocurrencia" y "por reclamación", conforme al uso común en la industria del seguro, es que las cláusulas que establecen máximos "por accidente" u ''ocurrencia'' han de ser interpretadas a base de la causa del accidente y no a base de su efecto. Así pues, cuando una causa próxima, ininterrumpida y continua resulta en daños a más de una persona, hay un sólo accidente u ocurrencia dentro del significado de la cláusula "por accidente u ocurrencia ”, que limita la responsabilidad del asegurador a cierta cantidad por cada evento, sin importar el número de reclamaciones (causas de acción) independientes que surjan de este accidente u ocurrencia.
No obstante, el término "por reclamación" (each claim) no se refiere a cada accidente u ocurrencia, sino a cada condena de daños independiente (each jugdment) por la cual el asegurado resulte responsable como *1224 consecuencia de un accidente; es decir, cada causa de acción independiente.” (Cita omitida.).
El Código de Seguros establece que, como parte de los deberes de la Asociación, ésta vendrá obligada a pagar reclamaciones cubiertas existentes antes de la determinación de la insolvencia y tal obligación se satisfará pagando al reclamante una cantidad que no excederá de ciento cincuenta mil (150,000) dólares por reclamación. 26 L.P.R.A. see. 3808.
Conforme a la definición que establece el estatuto (26 L.P.R.A. see. 3805, Definiciones), “reclamante” significa todo asegurado que presente una reclamación como asegurado o toda persona que presente una reclamación por responsabilidad civil. Ninguna persona que sea un afiliado del asegurador insolvente podrá ser un reclamante.
Por otro lado, el Art. 38.050(6)(a)(b) del Código de Seguros dispone:
“(6) Reclamación Cubierta.-Significa una reclamación no pagada, incluyendo una de primas no devengadas que surja de, y esté dentro de la cubierta y esté sujeta a los límites aplicables de una póliza de seguros a la cual aplique este capítulo que haya sido emitida por un asegurador conforme a lo dispuesto en este título si tal asegurador se convierte en asegurador insolvente luego de la fecha de la vigencia de este Capítulo y donde:
(a) El reclamante o el asegurado sea un residente de Puerto Rico al momento en que ocurra el suceso contra el cual se asegura. Para entidades que no sean un individuo, la residencia de un reclamante o de un asegurado es el estado donde radica su sitio principal de negocio al momento de ocurrir el evento asegurado, o (b) la propiedad de la cual surge la reclamación está permanentemente localizada en Puerto Rico.
Reclamación Cubierta — No incluirá cantidad alguna adjudicada como daños punitivos o ejemplares', ni procurados como devolución de primas bajo un plan de tarifaje prospectivo; ni que se deba a un reasegurador, asegurador, asociación de suscripción conjunta o asociación suscriptora por concepto de recobros por subrogación o de otro modo.” (Énfasis suplido.) 26 L.P.R.A. see. 3805.
Es notable que del lenguaje del estatuto no se evidencia la intención específica de limitar las reclamaciones a aquellas por accidentes u ocurrencia, ni el número de reclamaciones que puedan configurarse de un accidente en particular. Se define una reclamación cubierta como “una reclamación no pagada...[que] esté dentro de la cubierta y esté sujeta a los límites aplicables de una póliza de seguros ... que haya sido emitida por un asegurador...”. (Énfasis suplido.) 26 L.P.R.A. see. 3805. Por lo que la Asociación nunca vendrá obligada a pagar a un reclamante una suma en exceso de la obligación del asegurador bajo la póliza emitida, suma que deberá ser mayor de cien dólares ($100), pero no podrá exceder de ciento cincuenta mil dólares ($150,000) por reclamación. (26 L.P.R.A. see. 3808). Cualquier restricción adicional deberá surgir de la póliza que suscribieran el asegurador y el asegurado.
Corresponde a los tribunales interpretar liberalmente el sentido y significado de las palabras y cláusulas contenidas en el estatuto, de manera que se logre el objetivo y propósito de proveer protección al asegurado, de pagar las reclamaciones cubiertas y de evitar excesivas dilaciones en el pago y pérdidas financieras a los reclamantes o tenedores de pólizas como resultado de la insolvencia de un asegurador. 26 L.P.R.A. see. 3804.
Con ese mandato en perspectiva, no tenemos base para sustituir la palabra “reclamación” por las de “accidente u ocurrencia”, sustrayéndole su común y ordinaria acepción para imprimirle otro significado. El estatuto no utiliza las palabras accidente ni ocurrencia. Expresamente aplica el recobro de ciento cincuenta mil dólares ($150,000) a cada reclamación. Resolver lo contrario significaría enmendar jurisprudencialmente el estatuto.
*1225 No podemos concluir que la intención del legislador fue la de limitar la responsabilidad de la Asociación a la cantidad de ciento cincuenta mil dólares ($150,000), independientemente del número de reclamantes, perjudicados, causas de acción o reclamaciones que pudiesen presentarse motivadas por un accidente u ocurrencia. Si hay alguna limitación por accidente u ocurrencia, deberá surgir de la póliza suscrita entre las partes. (Bastardillas en el original y negrillas nuestras.) Montañez v. U.P.R., supra, a las págs. 416-418.
Luego de ese análisis exhaustivo, en el caso citado, el Tribunal Supremo llegó a la conclusión de que la A. G.S.M. nunca vendrá obligada a pagar a un reclamante una suma en exceso de la obligación del asegurador insolvente bajo la póliza emitida en exceso de $150,000 por cada reclamación. También añadió que de haber alguna limitación por accidente u ocurrencia, la misma deberá surgir de la póliza suscrita entre las partes.
III
Exposición y Análisis
Certiorari KLCE-09-01713
Por estar íntimamente relacionados los señalamientos de error números 1, 2, 3 y 4 presentados por los demandantes-peticionarios, los discutiremos conjuntamente.
Los demandantes-peticionarios nos solicitan que revisemos la actuación del foro de instancia de determinar que la parte demandada-recurrida tiene que pagar el interés legal vigente al momento de emitirse la sentencia sin tomar en cuenta las variaciones ocurridas en las tablas de interés, las cuales ocurren cada seis meses. Sostienen que, tanto la sentencia recurrida como la Regla 43.3, supra, son inconstitucionales; esta última de su faz y de su aplicación, además de que es contradictoria, ambigua y oscura. Añaden que la interpretación del foro recurrido es inconstitucional por violar el Artículo II, Sección 7 de la Constitución de Puerto Rico, ya que conlleva como consecuencia que los demandantes reciban menos compensación al no tomar en cuenta las fluctuaciones en el mercado entre la fecha en que se emitió la sentencia y la fecha del pago.
No obstante, al revisar el derecho aplicable nos percatamos de que no es así. La Regla 44.3, supra, dispone con claridad que el interés legal se computará tomando en cuenta el interés que haya fijado la O.C.I.F. al momento en que se dictare la sentencia. En este caso, a la fecha en que se emitió la sentencia, 29 de septiembre de 2003, el interés vigente era el 1%, por lo que éste es el interés aplicable. Todos los casos que citan los peticionarios para sostener su posición tratan sobre expropiaciones forzosas del Estado. Además, en todos ellos, el Tribunal Supremo ha sido específico en que las variaciones en las tasas de interés se tomarán en cuenta solamente en los casos de expropiación forzosa a los efectos de cumplir con el mandato constitucional y de conformidad con el propósito de la Ley de Expropiación Forzosa, según enmendada.
En este caso, los tribunales estamos llamados a respetar la regla que dispone que el interés postsentencia aplicable es el que estaba vigente al momento de dictarse la sentencia. Resolver lo contrario significaría enmendar jurisprudencialmente el estatuto. Por lo tanto, resolvemos que los primeros cuatro señalamientos de error no se cometieron.
Nos parece necesario aclarar que la A.G.S.M. responde por las costas y los intereses legales postsentencia, aun cuando dicha cantidad sobrepase el límite de cubierta pactado en la póliza de seguros entre el asegurador insolvente y la U.P.R., en este caso de $500,000. Montañez v. U.P.R., supra, a la pág. 428. Es decir, una cubierta de $500,000 no incluye las costas ni los intereses postsentencia, por lo que la A.G.S.M. respondería, además, de los $500,000, por el pago de estas dos partidas.
Procederemos ahora a discutir en conjunto los señalamientos de error números 5, 6 y 7 planteados por los demandantes-peticionarios por estar éstos relacionados entre sí.
*1226 Arguyen los demandantes-peticionarios que el T.P.I. incurrió en un grave error de derecho y abusó de su discreción al reconsiderar una orden previa en la que aprobó el pago de las costas del litigio en apelación. Argumentan que, debido a que la parte demandada-recurrida no se opuso al memorando de costas por ellos presentado en el término de 10 días dispuesto por la Regla 44.1(b) de Procedimiento Civil, supra, el T.P.I. estaba impedido de acoger como una reconsideración la moción en oposición de la U.P.R., luego de que dicho foro emitiera su resolución al respecto. Sostienen que ante una situación como ésta lo procedente era que la U.P. R. acudiera ante el Tribunal de Apelaciones para revisar la decisión del T.P.I. de aprobar el memorando de costas, conforme lo establece la Regla 44.1(b), supra. Tienen razón.
En el presente caso, el T.P.I. resolvió lo concerniente al memorando de costas presentado por la parte demandante-peticionaria sin que se hubiere seguido el anterior procedimiento. Si la U.P.R. no presentó su oposición al memorando de costas dentro de los 10 días siguientes a la fecha en que éste le fue notificado, el foro de instancia estaba impedido de aceptar la misma luego de haber emitido su resolución. De acuerdo con la Regla 44.1(b), supra, precitada, en caso de que una parte no presente su oposición dentro del término allí dispuesto, lo procedente es acudir en apelación ante este Tribunal de la resolución que emita el T.P.I. Siendo así, es forzoso concluir que la resolución emitida, por el foro a quo en la que determinó que no procede el pago de las costas en apelación a favor de la parte demandante, fue contraria a derecho y debe eliminarse. Dicho foro actuó sin jurisdicción en el caso.
No obstante, dado el caso que el término de 30 días para acudir en revisión ante este foro de una resolución u orden del T.P.I. ya transcurrió, la resolución emitida por dicho foro el 11 de marzo de 2009, en la que aprobó el memorando de costas presentado por la parte demandante, ya es final y firme e inapelable. Por lo tanto, resolvemos que el T.P.I. incidió en los señalamientos de error números 5, 6 y 7.
Finalmente, en el señalamiento de error número 8, los demandantes-peticionarios impugnan la denegatoria del TPI a imponer honorarios de abogado a su favor y su negativa a encontrar a la parte demandada-recurrida incursa en temeridad.
Como mencionáramos anteriormente, la determinación de temeridad e imposición de honorarios de abogado es una discrecional. En este caso, luego de un concienzudo análisis, el foro de instancia consideró que la actuación de la U.P.R. durante la tramitación del pleito no fue temeraria. Así también lo entendieron este Tribunal y el Tribunal Supremo al acudir las partes en revisión de dicha determinación. En esa ocasión, otro panel hermano entendió que la actuación de la recurrida de aceptar negligencia en el caso en el 1997 y continuar legítimamente la litigación del caso para la determinación de la cuantía de daños, no fue temeraria. Así como también entendió que la imposibilidad de llegar a un acuerdo transaccional en el caso se debió a la controversia sobre la aplicabilidad al presente caso de la Ley Núm. 98 de 28 de agosto de 1994, y al hecho de que no fue hasta el 1994 que la A.G.S.M. asumió la representación de dicho centro docente.
Examinado el análisis anterior y el trámite acontecido en el presente caso, no podemos concluir la existencia de abuso de discreción, arbitrariedad ni ilegalidad por parte del foro sentenciador. Por lo tanto, resolvemos que el octavo señalamiento de error tampoco fue cometido.
Certiorari KLCE-09-01747
En la petición de certiorari de referencia, la peticionaria U.P.R. alega que erró el T.P.I. al determinar que la A.G.S.M. no responde por la diferencia del monto de la sentencia no consignado por la U.P.R. y al negarle la oportunidad de ventilar en sus méritos la controversia sobre el alegado agotamiento de los límites de agregado de la póliza de seguros. Sostiene que lo dispuesto en el Artículo 20.030 del Código de Seguros, supra, —a los efectos de que la responsabilidad del asegurador no excederá de aquella dispuesta en la póliza— es sólo aplicable a aseguradoras, no a la Asociación de Garantías. Asegura que, ni de la decisión de *1227 Montañez v. U.P.R., supra, ni de los artículos del Código de Seguros citados en la resolución recurrida, se desprende que la obligación de la A.G.S.M. de cubrir hasta $150,000 por reclamante esté sujeta a los límites de la póliza expedida por el asegurador insolvente por el cual está respondiendo.
Finalmente, aduce que la intención de la sentencia del T.P.I. de 29 de septiembre de 2003 era responsabilizar a la A.G.S.M. al pago de un monto de $150,000 por cada reclamación sin limitarlo a la cantidad pactada en la póliza. En cuanto a esto último, sostiene que la resolución recurrida tiene el efecto práctico de modificar una determinación previa del foro de instancia que fue confirmada por el Tribunal Supremo, actuación que es contraria a derecho. Se equivoca el peticionario. Veamos.
Primeramente, debemos aclarar que la parte demandada-peticionaria apoya su análisis del Artículo 38.080 del Código de Seguros, supra, en la versión actual de la ley. No obstante, se le escapa al peticionario que, específicamente, el mencionado artículo fue enmendado el 13 de agosto de 2008 mediante la Ley Núm. 262, en fecha posterior a los hechos que conforman esta causa y a la fecha en que se suscribió la póliza de seguros a favor de la parte demandada-recurrida. En cuanto al propósito de la referida ley, su exposición de motivos específicamente indica lo siguiente:
“[...]
No obstante lo dispuesto en el Capítulo 3 8 del Código de Seguros sobre la obligación de la Asociación en cuanto al pago de reclamaciones, la redacción del Artículo 38.080 no es clara en cuanto al alcance de dicha obligación. Así lo dispuso el Tribunal Supremo de Puerto Rico al resolver el caso de Montañez López y otros v. Universidad de Puerto Rico y otros, 2002 JTS 40.
Basados en lo anteriormente expuesto, esta Asamblea Legislativa entiende que es necesario enmendar el Capítulo 38 del Código de Seguros para establecer claramente el límite de responsabilidad de la Asociación con respecto a las reclamaciones cubiertas por ésta.” (Enfasis nuestro.)
De la exposición de motivos de la Ley Núm. 262, supra, se desprende que antes de su aprobación, el Artículo 38.080, supra, no establecía con claridad cuál era el límite de responsabilidad de la A.G.S.M. con respecto a las reclamaciones cubiertas por ésta. Según citado anteriormente, el inciso (c) del Artículo 38.08, supra, disponía que la obligación de la A.G.S.M. “se satisfará pagando al reclamante una cantidad que no excederá de ciento cincuenta mil (150,000) dólares por reclamación”. Más adelante aclaraba que “[e]n ningún caso vendrá obligada la Asociación a pagar a un reclamante una suma en exceso de la obligación del asegurador insolvente bajo la póliza o cubierta de la cual surge la reclamación”. (Enfasis nuestro.) 26 L.P. R.A. see. 3808.
Confrontado con una controversia similar a la de autos, en el caso de Montañez v. U.P.R., supra, el Tribunal Supremo se dio a la tarea de explicar con detenimiento el alcance de la responsabilidad de la A.G.S.M. basado, primeramente, en un análisis de las disposiciones legales aplicables del Código de Seguros y otras leyes relacionadas, complementado con otras fuentes secundarias, como tratadistas expertos en materia de seguros y jurisprudencia tanto federal como estatal.
Ese análisis llevó al Tribunal Supremo a resolver que la sentencia a ser emitida en ese caso no podía obligar a las aseguradoras al pago de una cantidad mayor a la pactada en la póliza. Dado que en ese caso el máximo agregado de cubierta pactado bajo la póliza era de $500,000, dicho foro indicó que la suma total de las partidas relativas a cada uno de los reclamantes, no podía exceder de $500.000. Véase, nota al calce núm. 20, a la pág. 418. Lo resuelto por el Tribunal Supremo en el caso de Montañez v. U.P.R., supra, revela que si bien es cierto que según el Artículo 38.080, supra, el tope por reclamación es de $150,000, la realidad es que la suma de dichas reclamaciones no puede exceder del límite de cubierta pactado por las partes en la póliza de seguro.
*1228 Posterior a dicha decisión, se aprobó la Ley Núm. 262, supra, la cual, como dijimos anteriormente, estableció claramente los límites a pagar por la A.G.S.M. los cuales son de $300,000 por evento, independientemente del número de reclamantes, ni más de $1,000,000 como agregado anual. Debido a la imposición de dichos límites de responsabilidad, eliminó la primera oración del segundo párrafo del inciso (a) (1) del Artículo 38.080, supra, la cual limitaba la suma a ser pagada por la A.G.S.M. por reclamación a la obligación pactada por el asegurador insolvente en la póliza.
No obstante, en el caso ante nos, la doctrina aplicable es la vigente con anterioridad a la enmienda de la Ley Núm. 262, supra. De conformidad con dicha doctrina, y lo resuelto por el Tribunal Supremo en Montañez v. U. P.R., supra, la cantidad a ser pagada por la A.G.S.M. por reclamaciones cubiertas es de un máximo de $150,000 por reclamación hasta cubrir el límite de la obligación pactada en la póliza por el asegurador insolvente.
Esto es cónsono con el mandato establecido en el Artículo 38.08 del Código de Seguros, supra, que establece que la Asociación “[s]e considerará como el asegurador hasta el límite de su obligación en las reclamaciones cubiertas y hasta tal límite tendrá todos los derechos, poderes y obligaciones del asegurador insolvente como si éste no estuviere insolvente”. El lenguaje de este articulado extiende las obligaciones del asegurador insolvente a la A.G.S.M. hasta el límite de su responsabilidad. “Las obligaciones del asegurador insolvente son coextensivas a la Asociación hasta tal límite.” Montañez v. U.P.R, supra, a la pág. 420.
De acuerdo con lo antes expresado y del análisis del marco estatutario vigente a la fecha de los hechos del caso que nos ocupa, podemos concluir que la A.G.S.M. no puede pagar en exceso de lo que la aseguradora insolvente, en este caso C.I.S., se obligó en la póliza suscrita con la U.P.R., ascendente a $500,000 en el agregado. De los autos surge que desde el año 1996, la A.G.S.M. compareció en interés de la U.P.R. mediante moción, a la cual se unió una certificación emitida por la Comisionada Especial Auxiliar de la Oficina de Liquidaciones de la Oficina del Comisionado de Seguros de Puerto Rico, para certificar el balance disponible de la póliza de seguros suscrita por dicho centro docente con la extinta C.I.S. En dicho escrito se informó que durante el año póliza 1985-1986, dicha aseguradora había efectuado pagos por reclamaciones contra la U.P.R. ascendentes a $408,399, por lo que el balance disponible era de $91,601. Apéndice I, págs. 1-3 del alegato de la parte recurrida. Basado en dicha certificación, el 16 de diciembre de 2003, la A.G.S.M. consignó ante el T.P.I. la suma de $91,601 más $810.31 en intereses. No habiendo sido objetadas ni la certificación ni la consignación hecha por la A.G.S.M., era innecesaria la presentación de la póliza, ya que la falta de objeción se considera como una admisión contra interés por parte de la U.P.R.
Siendo así, no hay duda de que la única cantidad por la cual la A.G.S.M. debe responder es por el balance disponible en la póliza. El balance en exceso de $91,601 deberá ser pagado por la codemandada U.P.R., además de los intereses postsentencia sobre dicha suma.
Finalmente, queremos aclarar que lo resuelto por el T.P.I. en la sentencia de 29 de septiembre de 2003 es compatible con lo establecido por el Tribunal Supremo en Montañez v. U.P.R., supra. De una lectura de la aludida sentencia surge que la controversia planteada ante ese foro era diferente a la que hoy se nos plantea mediante los recursos ante nuestra consideración. En ese momento, la controversia planteada por los demandantes al T.P.I. estaba limitada a determinar si “la A.G.S.M. viene obligada a responder por la cantidad máxima de $150,000 que dispone el Artículo 38.080 del Código de Seguros de Puerto Rico por cada reclamación o causa de acción y no por suceso u ocurrencia que origina el litigio”. Apéndice del recurso KLCE-09-01713, pág. 32. Por tal razón, dicho foro se limitó a citar en su sentencia el análisis esgrimido por el Tribunal Supremo en Montañez v. U.P.R, supra, relacionado con la diferencia entre los conceptos de “accidente u ocurrencia” y “reclamación”. Conforme a ese análisis, llegó a la conclusión de que “la AGSM responderá hasta el máximo estatuido en el Código de Seguros por cada reclamante y no por el evento u ocurrencia como postulara”. Apéndice del recurso KLCE-09-01713, pág. 34. La controversia planteada por los demandantes ante el foro de instancia no requería entrar a dirimir si la cantidad de $150,000 a pagar por *1229 reclamación estaba sujeta a los límites de la póliza de seguros suscrita entre la aseguradora insolvente y el asegurador. Es en la etapa postsentencia —con la consignación de la U.P.R.— que surge dicha controversia entre las partes.
Por todo lo antes expresado, resolvemos que no se equivocó el T.P.I. al determinar que los pagos reclamados por los demandantes, mediante la moción de ejecución de sentencia sumaria, en exceso de $91,601 deben ser sufragados por la U.P.R., además de los intereses sobre dicha suma. Así pues, concluimos que el foro a quo no incidió en los errores señalados por la parte demandada-recurrida en la petición de certiorari KLCE-09-01747.
Dictamen
IV
Por los fundamentos antes expuestos, se expiden ambos autos de certiorari a los efectos de revocar la determinación del T.P.I. —que declara no ha lugar el memorando de costas en apelación presentado por los demandantes— por no ser ésta válida, debido a que fue emitida contraria a derecho. Resolvemos que la resolución previamente emitida por dicho foro el 11 de marzo de 2009, declarando con lugar el memorando de costas presentado por los demandantes, está vigente y es final y firme e inapelable. Así modificada la resolución recurrida, se confirma en todo lo demás.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIO 2010 DTA 67

. Dicho Alto Foro declaró No Ha Lugar sendos recursos de certiorari presentados por las partes.